DONALD HELVEY *et al.*, Petitioners-Appellees, *v.* THERESA MARIE REDNOUR *et al.*, Respondents-Appellants.

Fifth District No. 79-145

Opinion filed July 7, 1980.

Thomas E. Kennedy, III, of Legal Advocacy Services, of East St. Louis, and Herbert A. Eastman, of Land of Lincoln Legal Assistance Foundation, Inc., of Cairo, for appellants.

Wolff, Jones, Lawder & Elmore, of Murphysboro, for appellees.

Kent Hull and Ronald M. Soskin, both of National Center for Law and the Handicapped, Inc., of South Bend, Indiana, for amici curiae.

Mr. JUSTICE KASSERMAN delivered the opinion of the court:

Petitioners, Donald and Norma Helvey, brought an action to adopt the minor child of respondents, Charles and Marie Rednour, pursuant to section 1 *et seq.* of the Adoption Act (Ill. Rev. Stat. 1977, ch. 40, par. 1501 *et seq.*). Marie Rednour, respondent, filed a motion to dismiss the petition for adoption which was denied. A hearing was then held on the petition. At the close of evidence, the trial judge found on the basis of medical testimony that Marie Rednour, mother of the child sought to be adopted, had been adjudicated to be mentally retarded, that she was presently in that condition and that she would remain so in the foreseeable future. The court then appointed a guardian ad litem for said respondent with the authority to consent to the adoption of her child. On motion of respondent mother, the trial court stayed the adoption proceedings and certified a question of law for interlocutory appeal under Supreme Court Rule 308 (Ill. Rev. Stat. 1977, ch. 110A, par. 308).

The issue certified for appeal, one of first impression before this court, is as follows:

"Does Ill. Rev. Stat. Ch. 40, §1501 *et seq.* (hereinafter, the Act) violate the Due Process and Equal Protection Clauses of the

United States Constitution and Article 1, §2 of the Constitution of the State of Illinois in the following respects:

a. By creating a classification in §1501 of the Act consisting of those persons who have been adjudicated mentally retarded and who, at the time an adoption petition concerning their children is filed, are found to continue to be mentally retarded and to be persons who will not recover in the foreseeable future, and by providing that the parental rights of these persons may be terminated in an adoption proceeding without the consent of such persons and without a judicial determination that they are unfit persons within the meaning of §1501(D) of the Act;

b. By creating an irrebuttable presumption that the foregoing class of persons are unable to make the decision either to retain their parental rights or to consent to termination of their parental rights, or to establish facts in a judicial proceeding tending to show that they are fit parents of their children;

c. By authorizing a guardian *ad litem* appointed pursuant to §1501 of the Act to consent to an adoption without prescribing any standards to guide the exercise of said guardian find that the mentally retarded parent is an unfit person within the meaning of §1501(D) of the Act."

Section 8 of the Act (Ill. Rev. Stat. 1977, ch. 40, par. 1510) addresses itself to the requirement of consent to adoption and states:

"Except as hereinafter provided in this section, consents shall be required in all cases, unless the person whose consent would otherwise be required shall be found by the court to be an unfit person as defined in Section 1 of this Act * * *. Where consents are required in the case of an adoption of a child, the consents of the following persons shall be sufficient:

\* \* \*

(e) If the court finds that either parent of the child sought to be adopted has been adjudicated an incompetent by reason of mental impairment, or adjudicated mentally ill, in need of mental treatment, or mentally retarded, and if the court further finds from the evidence by 2 qualified physicians selected by the court that such parent continues to be mentally ill, in need of mental treatment or mentally retarded, and will not recover from such mental illness or mental retardation in the foreseeable future, then the court may on its own motion, or on the application of the

petitioners, appoint the State's Attorney of the county in which the proceeding is pending or some other licensed attorney as guardian ad litem, to represent such parent who is mentally ill, in need of mental treatment or who is mentally retarded in the adoption proceedings, and he shall have authority to consent to the adoption; * * *."

The respondent mother contends that this statutory framework creates two classes of parents from whom consent to adoption is not required in order to terminate parental rights. The first class consists of parents who have been found by the court to be unfit. The second class is composed of parents who have been adjudicated incompetent by reason of mental impairment or who have been adjudged to be mentally ill, in need of mental treatment or mentally retarded and the court finds that such condition will not improve in the foreseeable future. For parents in the second class, no finding of unfitness is necessary. Respondent asserts that this classification plan is violative of the equal protection and due process clauses of the fourteenth amendment to the United States Constitution and of article 1, section 2 of the Illinois Constitution. According to respondent it unjustly discriminates against retarded parents by involuntarily terminating their parental rights without a hearing to determine their fitness as parents. We agree.

In the instant case, section 8 of the Act terminates parental rights by waiving the parental consent requirement in an adoption proceeding if the parent is found to be unfit. Unfitness, as defined by section 1(D) of the Act, refers to actions on the part of such parent which are harmful to a child including, but not limited to, abandonment, desertion, substantial neglect, extreme or repeated cruelty, physical abuse, and habitual drunkenness or addiction to drugs. Termination also may result if a parent is retarded and exhibits no potential for recovery in the foreseeable future. In the latter instance, the court may appoint a guardian ad litem and vest in him the power to consent to adoption. There is nothing in the statute necessitating a finding of parental unfitness as a condition precedent to the appointment of the guardian. Thus, the statute implicitly creates a presumption that all retarded parents are unfit. The practical effect of such a presumption is to treat mentally healthy and mentally retarded parents unequally since only retarded parents can be deprived of their parental rights without proof of their unfitness. Therefore, section 8 in its application is discriminatory to the rights of retarded parents.

In evaluating a claim under the equal protection clause, a court "must first determine what burden of justification the classification created thereby must meet, by looking to the nature of the classification and the individual interests to be affected." (*Memorial Hospital v. Maricopa County* (1974), 415 U.S. 250, 253, 39 L. Ed. 2d 306, 312, 94 S. Ct. 1076,

1080.) Therefore, it is necessary at the outset to determine whether section 8 of the Adoption Act unreasonably infringes a constitutionally guaranteed liberty of respondent.

The fourteenth amendment to the United States Constitution provides:

"No state * * * shall deprive any person of life, liberty or property without due process of law."

Although the liberty thus guaranteed has not been defined with exactness, the decisions have established examples of liberties which have been given constitutional protection. The court in *Meyer v. Nebraska* (1923), 262 U.S. 390, 399, 67 L. Ed. 1042, 1045, 43 S. Ct. 625, 626, stated:

"Without doubt, it denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and, generally, to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men. [Citations.]"

Consequently, certain personal rights have been deemed fundamental to the concept of ordered liberty and worthy of constitutional protection. Among these are the rights to marry, procreate, use contraceptives, undergo abortion, engage in family relationships and rear and educate children. (*Griswold v. Connecticut* (1965), 381 U.S. 479, 14 L. Ed. 2d 510, 85 S. Ct. 1678; *Roe v. Wade* (1973), 410 U.S. 113, 35 L. Ed. 2d 147, 93 S. Ct. 705; *Corey v. Population Services International* (1977), 431 U.S. 678, 52 L. Ed. 2d 675, 97 S. Ct. 2010; *Zablocki v. Redhail* (1978), 434 U.S. 374, 54 L. Ed. 2d 618, 98 S. Ct. 673.) These rights are conferred upon all persons, including the retarded. Therefore, as a result of the impact of section 8 of the Adoption Act upon parental rights, the interest affected in this case is no less than the right of a parent who has been adjudicated mentally retarded to "establish a home and bring up children."

We do not suggest, however, that a retarded person's parental rights are absolute. As with other fundamental rights, the right to establish a family and raise children may be curtailed or eliminated by State law if the purpose of the law is to advance a compelling State interest. (*Griswold v. Connecticut*; *Roe v. Wade*; *Corey v. Population Services International*; *Zablocki v. Redhail*; see *Memorial Hospital v. Maricopa County*.) Where the individual interest so affected by a statute is a fundamental right, such enactment is subject to strict scrutiny. Under this standard, the interest advanced by the statute must be compelling so as to justify its infringement of that right; moreover, if a compelling interest is to be advanced, the means employed through the statute must be the least

restrictive available and must be necessary to achieve the desired end. *San Antonio Independent School District v. Rodriguez* (1973), 411 U.S. 1, 36 L. Ed. 2d 16, 93 S. Ct. 1278; *Zablocki v. Redhail.*

As noted above, section 8 of the Adoption Act significantly infringes upon a retarded parent's right to raise a family. We must therefore ascertain whether such interference is necessary to achieve a compelling State interest. The protection of the welfare of a child has been recognized as being a sufficiently compelling interest. (*Stanley v. Illinois* (1972), 405 U.S. 645, 31 L. Ed. 2d 551, 92 S. Ct. 1208.) This interest is embodied in section 15 of the Adoption Act (Ill. Rev. Stat. 1977, ch. 40, par. 1519), which states that the prime consideration in adoption proceedings is the welfare of the child. By providing for waiver of the consent requirement under section 8 of the Act, a child may be removed from the home of unfit parents and placed in an environment more conducive to the child's best interest without notice to or the consent of any parent found to be unfit. In this respect section 8 certainly reflects the statutory directive of section 15.

Nevertheless, section 8(e) must be examined to determine whether it needlesssly infringes upon parental rights while pursuing its laudatory goal of promoting the welfare of the child sought to be adopted. In this respect, it cannot be argued that every retarded parent possesses at least one of the behavioral traits enumerated in section 1(D) of the Act so as to be rendered unfit for parenthood.

*Amici curiae*, the National Center for Law and the Handicapped and the Illinois Association for Retarded Citizens, in their brief for respondent, point out that retardation is not perceived medically as a monolithic disability. Rather, the variance among retarded persons in intellectual functioning and adoptive behavior has led the American Association on Mental Deficiency to subdivide retardation into four classifications depending upon functioning level: mild, moderate, severe, and profound. Immense differences exist between each classification. Any presumption of unfitness is particularly inappropriate when it involves parents who fall into the mildly retarded category. Since these parents are borderline cases, it cannot be said with certainty whether they are in fact retarded or, if they are, whether they display a character trait deemed to render them unfit to raise children. The fundamental right to raise a family must not be subjected to the risk that application of section 8(e) of the Act might result in the termination of the parental rights of a fit parent without due process of law and equal protection of law. A reliable and nonrestrictive means must be utilized to establish actual unfitness.

As stated by the United States Supreme Court:

> "Procedure by presumption is always cheaper and easier than individualized determination. But when, as here, the procedure

forecloses the determinative issues of competence and care, when it explicitly disdains present realities in deference to past formalities, it needlessly risks running roughshod over the important interests of both parent and child." (*Stanley v. Illinois* (1972), 405 U.S. 645, 656, 31 L. Ed. 2d 551, 562, 92 S. Ct. 1208, 1215.)

We therefore conclude that before respondent can be deprived of her right to raise her child, a hearing must be held to determine her fitness. If unfitness cannot be established at a fitness hearing, the interest of the State in promoting the welfare of the child becomes *de minimus,* and the statute becomes overly broad by infringing the right of fit parents to raise a family.

We also find section 8 of the Act (Ill. Rev. Stat. 1977, ch. 40, par. 1510) to be in violation of respondent's due process rights.

Where a fundamental personal interest which is worthy of constitutional protection is sought to be affected by an action of the State, a determination of what process is due encompasses the consideration of a number of factors. The Supreme Court of the United States has enumerated the following factors to be eligible for such consideration:

"[F]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. [Citation.]" (*Mathews v. Eldridge* (1976), 424 U.S. 319, 335, 47 L. Ed. 2d 18, 33, 96 S. Ct. 893, 903; *Smith v. Organization of Foster Families for Equality and Reform* (1977), 431 U.S. 816, 53 L. Ed. 2d 14, 97 S. Ct. 2094.)

The individual interest sought to be affected in this case is the right of a retarded parent to raise a family, a right we deem to be a constitutionally protected interest. (*Meyer v. Nebraska.*) The risk inherent in the procedural operation of section 8 is the termination of parental rights without notice based on a presumption that all retarded parents are unfit. Manifestly, a fitness hearing would eliminate the risk that a parent who has been adjudged to be mentally retarded but whose retardation is not so extensive as to render that parent an unfit parent may still have his or her parental rights terminated. Opposed to these considerations are the interest of the State in the regulation of adoptions and the administrative burden to be borne by it in conducting fitness hearings for parents who have been adjudged to be mentally retarded. As we have stated, the interests of the State are compelling only if the parent is unfit; otherwise, the interest is *de minimus.* Since a fitness hearing is a normal procedure

for involuntarily terminating the rights of parents who have not been adjudged to be mentally retarded, affording retarded parents such a proceeding could not be said to unduly burden the State. The State interest in providing suitable homes for children and the administrative burden of conducting an additional hearing do not justify the termination of a parent's fundamental right in the absence of a showing of unfitness.

Although, as we have now held, an adjudication that a parent is mentally retarded may not in and of itself render that parent unfit, evidence of such adjudication may be considered, along with all other pertinent evidence bearing upon the question of that parent's fitness.

For the foregoing reasons, we hold that section 8(e) of the Adoption Act, so far as it pertains to the appointment of a guardian ad litem with power to consent to adoption for a parent who has been adjudged to be mentally retarded, is in violation of the equal protection and due process clauses of the fourteenth amendment of the Constitution of the United States as well as article 1, section 2 of the Illinois Constitution.

The final issue before this court is whether the absence of any standards with respect to parental unfitness violates the equal protection and due process rights of respondent by failing to provide guidance for the guardian in the exercise of his consent powers. Our holding above that the appointment of a guardian ad litem with authority to consent to adoption for parents adjudged to be mentally retarded is unconstitutional renders discussion on this issue unnecessary.

We therefore reverse the order of the Circuit Court of Jackson County appointing a guardian ad litem for respondent mother and remand this cause for a fitness hearing.

Reversed and remanded.

JONES, P. J., and HARRISON, J., concur.