161 Ill. App.3d 325 (1987)
514 N.E.2d 544
In re E.J.F. (The People of the State of Illinois, Petitioner-Appellee,
v.
Margaret Freeman, Respondent-Appellant).
No. 4-87-0212.
Illinois Appellate Court  Fourth District.
Opinion filed September 29, 1987.
*326 Thomas A. Bruno, of Urbana, for appellant.
Thomas J. Difanis, State's Attorney, of Urbana (Kenneth R. Boyle, Robert J. Biderman, and Timothy J. Londrigan, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.
Harvey C. Welch, of Urbana, guardian ad litem.
Order affirmed.
JUSTICE LUND delivered the opinion of the court:
The circuit court of Champaign County entered an order on February 27, 1987, terminating the parental rights of respondent, Margaret Freeman, as well as the parental rights of the minor's unknown father, pursuant to section 1(D) of the Adoption Act (Ill. Rev. Stat. 1985, ch. 40, par. 1501(D)). Respondent appeals. We affirm.
Respondent gave birth to her son, the minor E.J.F., on May 30, 1985. At the time, respondent was incarcerated at the Dwight Women's Correctional Center. Respondent was discharged from Dwight on June 2, 1985, but remained hospitalized at St. Francis Hospital, where the minor was born, and then at the Adolf Meyer Mental Health and Developmental Center in Decatur until some time in September 1985.
The State filed a petition to find the minor dependent on June 3, 1985, pursuant to section 2-5 of the Juvenile Court Act (Ill. Rev. Stat. 1983, ch. 37, par. 702-5). A shelter-care hearing was held, and the court ordered that temporary custody be placed with the guardianship administrator of the Illinois Department of Children and Family Services (DCFS). The minor was placed in a foster home and has resided with foster parents since his discharge from the hospital. The matter was later transferred from Livingston County to Champaign County.
On November 21, 1985, the State filed a two-count supplemental petition alleging in count I that the minor was abused by reason of an injurious environment when he lived with respondent, and in count II that the minor was dependent because of the mental disability of respondent. After a hearing, the court adjudicated the minor dependent and abused based on the allegations in the original and supplemental *327 petitions. This adjudicatory hearing was held on December 26, 1985. On January 28, 1986, the dispositional hearing was held. Respondent did not appear at either hearing although served with notice. Moreover, the public defender, respondent's attorney, stated she had not been able to contact respondent regarding these court proceedings. The dispositional order made the minor a ward of the court, transferred custody to DCFS, and required respondent to cooperate with DCFS in visitation matters and in taking steps to become a responsible parent. Included among those steps were an evaluation for alcohol or other drug dependency and a mental health evaluation. The written order was entered on February 6, 1986.
A report prepared by DCFS worker Kim Fitton, for a review hearing on March 26, 1986, indicated respondent was less than cooperative with DCFS. Fitton's attempts to schedule visitation sessions between respondent and her son and to arrange evaluations for chemical dependency and mental health were rejected. Fitton managed one visit with respondent in mid-March. Nothing was accomplished because of respondent's lack of cooperation, and the visit ended when respondent asked Fitton to leave. Again, respondent did not appear at the review hearing nor did she speak with her attorney.
A second review hearing was held on December 30, 1986. The DCFS report for that hearing indicated respondent's whereabouts were unknown from mid-March until December 1986. At that time, respondent was found to be an inpatient at the Andrew McFarland Mental Health Center (McFarland Center) in Springfield.
A supplemental petition was filed on December 18, 1986, seeking to find the parents of E.J.F. unfit and to terminate their parental rights.
The hearing on the petition was held on January 20, 1987. Dr. Andrew Hoekstra, a psychiatrist at the McFarland Center, examined respondent after she had been referred to the McFarland Center in October 1986 by the judicial system. She had been arrested on a charge of theft and, after an examination, been found unfit to stand trial. She was then transferred by court order to the McFarland Center. Dr. Hoekstra gave his opinion that respondent was a paranoid schizophrenic, that is, she had an inability to deal rationally with reality. Although medication had helped respondent, Dr. Hoekstra testified that respondent would likely need supervision for the rest of her life. She was not properly able to take care of herself at the present time, and certainly not able to care for a 1 1/2-year-old child. The doctor believed it was unlikely that respondent would be able to properly function as a parent for the next several years.
*328 On cross-examination, Dr. Hoekstra stated that there was a substantial possibility that respondent would be fit enough to stand trial within one year's time through the help of medication. Respondent's medical records indicated to Dr. Hoekstra that she had been previously hospitalized for mental illness but had been released after making certain progress. Hoekstra testified that there was a possibility that respondent could be transferred to an outpatient program or half-way house program within a year's time. However, there was no way to guarantee that respondent's irrational behavior would never return. It would linger as a threat to her independence and a completely normal life-style.
Dr. Hoekstra's opinions were substantially corroborated by Dr. Shirley Eyman, another physician on staff at the McFarland Center.
Respondent introduced certain criminal court files to explain her disappearance from March until December 1986. Respondent was arrested in Champaign County, cause No. 86-CM-470. At her arraignment, she was held in contempt of court and was sentenced to 120 days in the Champaign County Correctional Center, which sentence began on March 31, 1986. From July 14 to August 13, 1986, respondent was a resident in the Champaign County Correctional Center as a result of her arrest in cause No. 86-CM-1291. In that cause, the court ordered respondent to be examined by a psychiatrist, and she was found to be unfit to stand trial.
Respondent was again arrested for theft on September 28, 1986, in cause No. 86-CF-1776. The State filed a motion for determination of fitness, which motion was granted. The doctor who examined respondent found her to be "extremely psychotic" and not fit to stand trial. His recommendation was for inpatient psychiatric treatment. On October 9, 1986, respondent was admitted to the McFarland Center, and she has been in treatment since that time.
The court found both parents unfit. Respondent was found to be an unfit parent because her mental illness rendered her incapable of discharging her parental responsibilities, and, further, the court found her inability would extend beyond a reasonable period of time. (See Ill. Rev. Stat. 1985, ch. 40, par. 1501(D)(p).) Also, the court found respondent unfit because she had failed to make reasonable progress toward returning E.J.F. to her home within 12 months of the minor's adjudication as a dependent and abused child. (See Ill. Rev. Stat. 1985, ch. 40, par. 1501(D)(m).) The father was found to be an unfit parent on several grounds, primarily based on his lack of contact with the child. He did not appear nor was he represented at the hearing. He is not a party to this appeal.
*329 The dispositional order, entered February 27, 1987, terminated the parental rights of respondent and the absent father. The court found the termination to be in the best interest of the minor.
Respondent raises two arguments on appeal: (1) the trial court erred in including the time respondent spent incarcerated in computing the 12-month period for determining reasonable progress under section 1(D)(m) of the Adoption Act (Ill. Rev. Stat. 1985, ch. 40, par. 1501(D)(m)); and (2) the trial court's decision that respondent's mental inabilities would extend beyond a reasonable period was against the manifest weight of the evidence.
 1 Respondent's initial argument concerns her months of involuntary confinement. She spent almost 4 1/2 months in 1986 incarcerated in the Champaign County Correctional Center. She spent the last three months of 1986 confined in the Andrew McFarland Mental Health Center. If any progress in her condition was made, it was while she was receiving treatment at the McFarland Center. Respondent argues the period of time in which she was incarcerated at the Champaign County Correctional Center should not be considered in determining whether she has made reasonable progress toward the return of her child. Respondent was not treated for her mental illness while incarcerated. Because DCFS was ordered to arrange a mental health evaluation for respondent, and because DCFS could not find her during the time she was incarcerated, respondent argues the period of incarceration should be discounted.
We reject respondent's argument. Although DCFS was ordered to arrange an evaluation at a mental health center, we do not place on DCFS the blame for respondent's failure to obtain the evaluation. The majority of the provisions in the dispositional order of February 6, 1986, were directed at respondent. In substance, the order directed respondent to cooperate with DCFS in participating in visitation, in establishing and maintaining a home capable of sustaining a child, and in undergoing evaluations for chemical dependency and mental fitness. Respondent rejected all efforts by DCFS worker Fitton to accomplish the goals. Respondent showed absolutely no willingness to cooperate. It was subsequently determined that she was mentally impaired. Nevertheless, at the stage of the relationship between respondent and DCFS in the months immediately following the dispositional order, respondent had to cooperate in some form in order to make progress. The efforts by DCFS to explain the order to respondent, to attempt to arrange a mental health evaluation for her, and to locate her after her disappearance showed exceptional perseverance and fortitude under the circumstances.
*330 Further, the 12-month period stated in section 1(D)(m) of the Adoption Act (Ill. Rev. Stat. 1985, ch. 40, par. 1501(D)(m)) must include the period of respondent's incarceration. Section 1(D)(m) of the Adoption Act (Ill. Rev. Stat. 1985, ch. 40, par. 1501(D)(m)) provides one of the grounds for a finding of parental unfitness, and states, in part:
"[F]ailure by a parent * * * to make reasonable progress toward the return of the child to such parent within 12 months after an adjudication of neglected minor under Section 2-4 or dependent minor under Section 2-5 of the Juvenile Court Act."
The legislature recognized the interests of both parents and children in setting a specified period of time. The parents are required to make progress in returning the child to their home. They must do so within a reasonable period of time in order to allow the child the opportunity to be raised in a normal family setting. It is unfortunate that respondent spent several months in the county correctional center without treatment. As for her minor son, the clock did not stop while she was incarcerated. The minor has continued to grow and develop, needing the nurture and care of parents. Respondent's rights as the natural mother of E.J.F. are important, and a decision to terminate those rights must be made with due care for those rights. The legislature determined that 12 months is a reasonable period to wait for the parent to make demonstrable progress before a finding of unfitness can be made. In this case, the 12-month period passed before the hearing was held on the petition to terminate parental rights. Respondent's interest does not outweigh the interest of the minor in having a chance for a normal home environment.
 2 Respondent's second argument is that the State did not show by clear and convincing evidence that respondent's mental illness would extend beyond a reasonable time. It is clear that respondent is mentally impaired. However, respondent questions the testimony of the two doctors as to the duration of her impairment.
Section 1(D)(p) of the Adoption Act (Ill. Rev. Stat. 1985, ch. 40, par. 1501(D)(p)) provides the standard for finding the parent unfit to have a child based on mental inabilities:
"[I]nability to discharge parental responsibilities supported by competent evidence from a psychiatrist or clinical psychologist of mental impairment, mental illness or mental retardation * * * and there is sufficient justification to believe that such inability to discharge parental responsibilities shall extend beyond a reasonable time period."
*331 The analysis required involves two steps. It must first be shown by competent evidence that the parent suffers from a mental inability sufficient to prevent him or her from discharging a parent's normal responsibilities. Second, there must be "sufficient justification" to find that the inability "shall extend beyond a reasonable time period." (Ill. Rev. Stat. 1985, ch. 40, par. 1501(D)(m).) There are no cases interpretating this relatively recent provision of the Adoption Act.
 3 The two doctors who testified gave similarly negative prognoses for respondent's future hope of being a successful parent. Dr. Hoekstra testified that respondent was grossly psychotic when admitted to McFarland Center. Her history indicated periods of hospitalization for paranoid schizophrenia. It was also Dr. Hoekstra's conclusion that respondent's condition was paranoid schizophrenia. Although respondent had made improvement through medication, Dr. Hoekstra gave his opinion that respondent was not likely to be able to care for a growing young child within the next few years. She would probably never be able to function normally outside of a supervised living situation.
Dr. Shirley Eyman was the other physician who testified. Although she had not been board-certified as a psychiatrist, she had completed 3 1/2 years of an approved psychiatric residency and was a staff member at the McFarland Center. No objection was raised at trial to her expert qualifications. She corroborated Dr. Hoekstra's testimony regarding respondent's previous hospitalizations and the nature of her impairment. As to the future, Dr. Eyman gave her opinion that respondent would not be able to fulfill the normal responsibilities of a parent to her child within the next few years.
The medical testimony was consistent and strongly weighted against respondent. We hold the testimony offered by Drs. Hoekstra and Eyman was a sufficient justification for the trial court's finding that respondent's mental impairment would extend beyond a reasonable time. Respondent argues the weight of the testimony should be limited because the doctors had only four months to watch respondent in treatment. Here again, however, time becomes a factor. An inordinate amount of time cannot be allowed to pass before the minor finds a stable home. The language of the statute is necessarily broad; the requirement is for a "sufficient justification" to support a finding that the impairment would extend beyond a reasonable time. (Ill. Rev. Stat. 1985, ch. 40, par. 1501(D)(p).) The medical prognoses were consistent and as conclusive as they could be; the testimony provided the necessary justification for the trial court's finding.
Respondent also argues the medical testimony should be discounted *332 because Dr. Hoekstra stated that respondent would likely be able to stand trial within a year. Respondent states that this contradicts any testimony that respondent will be unlikely to function as a normal parent within the next several years. However, Dr. Hoekstra correctly pointed out that the standards are different. There is no inconsistency.
For the reasons stated above, the order of the circuit court of Champaign County is affirmed.
Affirmed.
GREEN and McCULLOUGH, JJ., concur.