662

*In re* N.F., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. Shirley Fontana, Respondent-Appellant).

Second District   No. 2—87—0819

Opinion filed January 13, 1989.

NASH, J., dissenting.

Cliffe, Foster, Shapiro & Corneille, of De Kalb (Linda L. Walt, of counsel), for appellant.

Philip L. DiMarzio and Michael P. Coghlan, State's Attorneys, of Sycamore (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE INGLIS delivered the opinion of the court:

Respondent, Shirley Fontana, appeals from an order of the circuit court of De Kalb County finding her unfit, terminating her parental rights, and granting the Department of Children and Family Services (DCFS) the power to consent to the adoption of her natural child, N.F. On appeal, respondent challenges the constitutionality of section 1(D)(p) of the Illinois Adoption Act (Adoption Act) (Ill. Rev. Stat. 1985, ch. 40, par. 1501(D)(p)), under which the court found her unfit due to a mental illness that precluded her from discharging her parental responsibilities for a reasonable time. Respondent further argues that the trial court's findings of unfitness were against the manifest weight of the evidence. We affirm.

On February 17, 1983, respondent gave birth to N.F. while she was a resident of the H. Douglas Singer Mental Health Center (Singer), where she was being treated for a mental disorder. Because of respondent's illness, N.F. was taken from respondent at birth. On April 28, 1983, N.F. was adjudicated a neglected and dependent minor. While N.F. has lived with foster parents since her birth, she has had weekly supervised visits with respondent for most of her life.

On December 9, 1985, the State filed a petition to terminate respondent's parental rights on the basis that respondent and N.F.'s natural father, who is unknown, were unfit to have a child. At the subsequent hearing on the State's petition, Dr. Thomas Kirts, a psychiatrist, testified that he treated respondent from December 1980 to December 1982. Kirts noted that respondent had been hospitalized on two prior occasions and stated that he initially diagnosed respondent as suffering from an undifferentiated type of schizophrenic disorder generally characterized by bizarre behavior and delusions. Respondent was admitted to Singer in December 1982, and Kirts resumed seeing her when she was released from Singer in April 1983. Based on his later examinations of respondent, Kirts modified his diagnosis and concluded that respondent was suffering from a paranoid type of

schizophrenic disorder characterized by delusions of persecution and suspiciousness. Kirts further testified that although respondent was uncooperative and kept appointments only sporadically during the years 1980 through 1982, she had become very cooperative, was regularly keeping her appointments and attending therapy sessions at an outpatient treatment center for the mentally ill, and was able to cope well on one-quarter of the medication he originally prescribed for her. He also testified that respondent had not had any delusions or hallucinations since her hospitalization at Singer, but noted that schizophrenics can have remissions which may be caused by stress, such as that associated with parenting a child. Kirts further stated that although respondent had not had any serious problems or relapses since her release from Singer in April 1983, and while there was no perceived physical danger to N.F., respondent was not able to adequately parent a child. According to Kirts, respondent could meet N.F.'s physical needs, but did not have the capacity to emotionally relate to N.F. or N.F.'s needs. Kirts doubted respondent's ability to know when to support N.F. and when to discipline her. Kirts stated that it was extremely unlikely that his opinion would change within the next few years. On cross-examination, Kirts stated that paranoid schizophrenics can raise normal children and that it was possible that respondent could raise a normal child.

Frederick McNelly, a registered clinical psychologist called by respondent, testified that he met with respondent and N.F. and characterized N.F. as a fairly strong-willed girl of below average to average capabilities. McNelly further stated that there was a bond between N.F. and respondent. McNelly observed that although respondent occasionally turned to him for assistance in managing N.F., she nonetheless related appropriately to N.F. and attempted to manage N.F.'s behavior. McNelly opined that respondent would not be able to parent N.F. independently for a long time, but would be capable of parenting N.F. if she received professional support and monitoring from an agency such as DCFS. He also testified that schizophrenics almost always have periods of decompensation when the person would not be able to function normally or rationally, that the stress of parenting can contribute to such a period of decompensation, and that during such periods, respondent could not retain custody of N.F. McNelly also stated that, even with professional support, he did not believe respondent could provide N.F. with a sufficiently permanent home. Nonetheless, it was McNelly's opinion that it would not be in the best interests of either N.F. or respondent to be permanently separated, and that if N.F. were placed with another family, she should be al-

lowed to visit respondent.

Michele Kelly, a family services homemaker, worked with respondent and N.F. from December 1984 until the time of trial. Kelly testified that respondent had difficulty controlling her emotions when with N.F. and cried in front of N.F. during 75% of her visits. On cross-examination, Kelly stated that respondent would generally cry only when N.F. had to leave at the end of the visitation period. Kelly also testified that respondent was making little progress in developing appropriate parenting skills and in budgeting the disability income she received. Kelly prepared reports after each visitation which stress that, while respondent stated that she did not have money to buy things such as milk, respondent always had soft drinks and cigarettes in the house. During cross-examination, Kelly stated that she had discussed budgeting with respondent, but had never sat down with her to draft a formal, written budget. Kelly's reports also indicate that respondent had quit smoking, and Kelly testified that respondent told her that she was saving $70 to $80 per month since she quit. While Kelly observed that the floors and the bathroom in the house where respondent lived were dirty, she stated that she never saw bugs or vermin in the house. On examination by the trial judge, Kelly stated that she, and not respondent, took the initiative to discipline N.F., but that respondent had recently been more willing to comply with Kelly's suggestions.

On June 17, 1987, the trial court granted the State's petition to terminate respondent's parental rights. In so ruling, the court found respondent unfit pursuant to section 1(D)(m) of the Adoption Act (Ill. Rev. Stat. 1985, ch. 40, par. 1501(D)(m)), in that she failed to make reasonable progress toward the return of N.F. within 12 months after N.F.'s having been adjudicated a neglected minor, and pursuant to section 1(D)(p) of the Adoption Act (Ill. Rev. Stat. 1985, ch. 40, par. 1501(D)(p)), in that she was unable to discharge her parental responsibilities due to mental illness and her inability would extend beyond a reasonable time. Respondent brought this timely appeal after denial of her post-trial motion.

Respondent initially challenges the constitutionality of section 1(D)(p) of the Adoption Act (Ill. Rev. Stat. 1985, ch. 40, par. 1501(D)(p)), contending that it is unconstitutionally vague and denies her equal protection under the law. It is well settled that issues of constitutionality of a statute are properly preserved for review only when they have been raised in and passed upon by the trial court. (*In re Ladewig* (1975), 34 Ill. App. 3d 393, 396.) We note that respondent did not raise either constitutional challenge in the trial court or in her

post-trial motion, and while respondent did object on vagueness grounds to a question by the State relative to whether respondent was able to discharge her parental responsibilities, our review of the record indicates that respondent was objecting to the form of the State's question and not to the statute's constitutionality. Accordingly, we consider these issues waived. See *In re Ladewig*, 34 Ill. App. 3d at 396.

Respondent next contends that the State failed to show, by clear and convincing evidence, that she was unable to discharge her parental responsibilities and that such inability would extend beyond a reasonable period of time. We disagree.

■ ■ A trial court may terminate parental rights if the court finds, by clear and convincing evidence, that the parent is unfit, as defined in section 1(D) of the Adoption Act (Ill. Rev. Stat. 1985, ch. 40, par. 1501(D)). (*In re Enis* (1988), 121 Ill. 2d 124, 130.) Section 1(D)(p) of the Adoption Act permits a finding of unfitness where it is shown that the person has an

> "inability to discharge parental responsibilities supported by competent evidence from a psychiatrist or clinical psychologist of mental impairment, mental illness or mental retardation ***, and there is sufficient justification to believe that such inability to discharge parental responsibilities shall extend beyond a reasonable time period." (Ill. Rev. Stat. 1985, ch. 40, par. 1501(D)(p).)

Pursuant to this section, it must first be shown by competent evidence that the parent suffers from a mental inability sufficient to prevent her from discharging a parent's normal responsibilities. (*In re E.J.F.* (1987), 161 Ill. App. 3d 325, 331.) In addition, there must be a sufficient justification to find that the inability will extend beyond a reasonable time. (161 Ill. App. 3d at 331.) The trial court is in the best position to view and evaluate the parties and their testimony, and its decision is entitled to great deference and will not be reversed unless contrary to the manifest weight of the evidence. See *In re Pronger* (1987), 118 Ill. 2d 512, 526; *In re Allen* (1988), 172 Ill. App. 3d 950, 959.

■ In applying section 1(D)(p) to the instant action, we note that while cases of this nature should be considered on their individual facts and scrutinized carefully, previously decided cases may nevertheless be helpful in setting forth important considerations which need to be applied. (See *Perkins v. Breitbarth* (1981), 99 Ill. App. 3d 135, 138.) Two cases are instructive here.

In *In re R.M.B.* (1986), 146 Ill. App. 3d 523, 525, the respondent

challenged the trial court's ruling that she was an unfit parent as being against the manifest weight of the evidence. In that case, as in the instant action, the trial court found the respondent unfit on the basis that she did not make reasonable progress toward the return of her child within 12 months of the child's being adjudicated a neglected minor and also on the basis of the respondent's inability to discharge her parental responsibilities for a reasonable period of time as the result of a mental impairment, mental illness, or mental retardation. (146 Ill. App. 3d at 525.) In so ruling, the trial court placed great weight on the testimony of a psychologist who had interviewed and tested the respondent. (146 Ill. App. 3d at 529.) That witness testified that the respondent was both mildly retarded and a paranoid schizophrenic. (146 Ill. App. 3d at 526.) He further testified that the respondent was hostile and showed signs of delusions, hallucination, and impairment of reality. (146 Ill. App. 3d at 527.) According to the witness, these characteristics would increase over time and require three to five years of treatment. (146 Ill. App. 3d at 527.) He further opined that the respondent did not have the capability of discharging her duties as a parent and that inability would extend beyond a reasonable time. (146 Ill. App. 3d at 527.) The trial court concluded that the psychologist's testimony indicated that although a person with the mental disabilities of the respondent might be able to eventually care for herself, the stress of parenting was more than the respondent could tolerate. (146 Ill. App. 3d at 529.) The appellate court affirmed after concluding that the trial court's findings were predicated upon clear and convincing proof. 146 Ill. App. 3d at 529.

More recently, in *In re E.J.F.* (1987), 161 Ill. App. 3d 325, 330, the respondent argued that the trial court's decision that her mental inabilities would extend beyond a reasonable period was against the manifest weight of the evidence. In that case, two doctors, a psychiatrist and a psychiatric resident testified that the respondent was suffering from paranoid schizophrenia and was not likely to be able to fulfill the normal responsibilities of parenthood or properly care for her child for several years. (161 Ill. App. 3d at 331.) Moreover, the psychiatrist testified that the respondent would probably never be able to function normally outside of a supervised living situation. (161 Ill. App. 3d at 331.) The court found that the medical testimony provided a sufficient justification for the trial court's finding that the respondent's mental impairment would extend beyond a reasonable time. 161 Ill. App. 3d at 331.

Similarly, in the instant action, the record indicates that a psychiatrist presented evidence that respondent could not indepen-

dently discharge her parental responsibilities and that her inability would continue for at least the next few years. In addition, the clinical psychologist called by respondent testified that respondent would be unable to parent N.F. independently for a long time, and that even if provided with professional support and monitoring, would not be able to provide N.F. with a sufficiently permanent home. We find that the circumstances in this case clearly and convincingly support the trial court's judgment.

Respondent's final contention is that the trial court's finding of unfitness on the further grounds that she failed to make reasonable progress towards the return of N.F. within 12 months of N.F.'s adjudication as a neglected and dependent minor was against the manifest weight of the evidence because the trial court did not consider the circumstances which initially triggered the removal of her child. Because we find that the trial court did not err in terminating respondent's parental rights due to unfitness resulting from mental illness, we need not address this issue.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

UNVERZAGT, J., concurs.

JUSTICE NASH, dissenting:
I respectfully dissent to the waiver by the majority of the respondent's challenge to the constitutionality of section 1(D)(p) of the Adoption Act (Ill. Rev. Stat. 1985, ch. 40, par. 1501(D)(p)) as vague and a denial of her equal protection under the law. While I agree that these issues were not properly raised in the trial court, they should not, nevertheless, be waived in this case.

It has often been held that while a litigant is bound by his waiver of an issue, the court, which has a responsibility to reach a just decision, is not so bound. A reviewing court may ignore the waiver rule in order to reach a just result. (*People v. Hoskins* (1984), 101 Ill. 2d 209, 219; *Augsburg v. Frank's Car Wash, Inc.* (1982), 103 Ill. App. 3d 329, 333.) The parties have argued these constitutional issues in their respective briefs and they should be considered by this court.

In particular, it should be determined whether the classification of those parents who are presently unable to discharge parental responsibilities due to mental impairment, mental illness or mental retardation as unfit persons to have a child under section 1(D)(p) of the Adoption Act, but not also classifying as unfit other parents who are

equally and as profoundly unable to discharge parental responsibilities by reason of physical disabilities denied equal protection under the law. Under the statutory scheme, only those parents who are mentally impaired may have their parental rights terminated without their consent, while another parent who may be completely paralyzed or comatose and unable for physical reasons to parent a child, may nonetheless retain his or her parental rights in a child.

The fourteenth amendment to the United States Constitution and article 1, section 2, of the Illinois Constitution forbid unequal governmental action that arbitrarily discriminates against some and favors others in like circumstances. (*Ashcraft v. Board of Education* (1980), 83 Ill. App. 3d 938, 942.) Parental rights are fundamental and where, as here, such a right is to be eliminated by statute it is subject to strict scrutiny to determine whether the means employed are necessary and justified. (*Helvey v. Rednour* (1980), 86 Ill. App. 3d 154, 158-59.) In the present case, I would not permit the waiver doctrine to avoid the fundamental issue presented and therefore dissent.