198 Ill. App.3d 495 (1990)
555 N.E.2d 1198
In re J.B., a Minor (The People of the State of Illinois, Petitioner-Appellee,
v.
D.D., f/k/a D.B., Respondent-Appellant).
No. 5-89-0241.
Illinois Appellate Court  Fifth District.
Opinion filed June 11, 1990.
*496 Scott Wilzbach, of Salem, for appellant.
William Hoffeditz, Special Prosecutor, of Mt. Vernon (Kenneth R. Boyle, Stephen E. Norris, and Gerry R. Arnold, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.
Order affirmed.
JUSTICE RARICK delivered the opinion of the court:
On June 22, 1987, the Marion County State's Attorney filed a petition seeking termination of parental rights against respondent, D.D., with respect to her then five-year-old daughter, J.B. On March 14, 1989, the juvenile court entered an order terminating D.D.'s parental rights due to mental impairment pursuant to section 1(D)(p) of the Adoption Act (Ill. Rev. Stat. 1987, ch. 40, par. 1501(D)(p)). She appeals *497 from this order.
J.B., along with her younger brother, was removed from the home in June of 1986 following an investigation by the Department of Children and Family Services. The grounds for removal were based upon suspected sexual abuse by J.B.'s stepfather in addition to both parents' failure to protect the younger child from overexposure to the sun. The stepfather later admitted having sexually abused J.B.D.D. has since divorced him and has remarried. After psychological testing of both D.D. and J.B., the State sought termination of parental rights based on D.D.'s mental impairment.
 1 To uphold the trial court's determination, this court must find clear and convincing evidence that D.D. is an unfit parent. (In re Pronger (1987), 118 Ill.2d 512, 526, 517 N.E.2d 1076, 1081; In re Tolbert (1978), 62 Ill. App.3d 927, 930, 378 N.E.2d 565, 568.) However, we will not disturb the trial court's findings unless they are against the manifest weight of the evidence. In re T.E. (1984), 128 Ill. App.3d 449, 451, 470 N.E.2d 1300, 1302.
 2 Section 1(D)(p) of the Act requires "competent evidence from a psychiatrist or clinical psychologist of mental impairment" which supports a finding of an "inability to discharge parental responsibilities." (Ill. Rev. Stat. 1987, ch. 40, par. 1501(D)(p).) The trial court's decision to terminate respondent's parental rights was based primarily on the testimony of Dr. Jerry L. Boyd, a clinical psychologist who examined D.D. in 1987. Since the hearing on termination was held in March of 1989, the examination was two years old at the time of the hearing. Notwithstanding the time lapse, we are satisfied that there is sufficient evidence in the record to support the trial court's decision.
 3 In situations in which unfitness under subparagraph (p) of section 1(D) is in question, a two-part analysis is required. First, the evidence must indicate a parent is mentally unable to discharge her normal parental responsibilities. Second, there must be sufficient justification to find that the inability shall extend beyond a reasonable time period. (In re E.J.F (1987), 161 Ill. App.3d 325, 331, 514 N.E.2d 544, 548.) The State established both aspects of the analysis.
Dr. Boyd's testimony indicates D.D. has a mental impairment which prohibits her from discharging her parental responsibilities. He concluded that D.D. was of limited intellectual ability; that she has severe, chronic borderline personality disorder; that she was emotionally and behaviorally unstable; that she consistently demonstrated a severe and repeated neglect of the child; and that she demonstrated self-absorption to the exclusion of her protection of the child. Most importantly, he concluded she had been unable to meet the demands *498 of her adult life so as to care for herself, let alone her dependent children. Testimony by Lanette Crum, a foster parent, and Sheila Ashby, a social worker, indicated bizarre and cruel forms of punishment D.D. exacted on J.B. The minor told both women of D.D. locking her in a drawer and holding her head in a toilet bowl, telling J.B. she was going to "flush her down."
 4 With regard to the second part of the test, the language of the statute is broad and requires only "sufficient justification" to support the trial court's findings that the impairment will extend beyond a reasonable time. (Ill. Rev. Stat. 1985, ch. 40, par. 1501(D)(p). See also E.J.F., 161 Ill. App.3d at 331, 514 N.E.2d at 549.) A medical prognosis need not be absolutely conclusive to satisfy the requirement of the statute, and Dr. Boyd's testimony provided sufficient justification to support the trial court's findings. See E.J.F., 161 Ill. App.3d at 331, 514 N.E.2d at 549.
 5 Dr. Boyd testified that D.D. is unlikely to function differently in the future. There is no evidence on the record that D.D. has sought any treatment. Even with substantial treatment, Dr. Boyd stated he would not expect significant improvement in the foreseeable future. Other evidence corroborates Dr. Boyd's testimony. He testified one manifestation of self-absorption in people with borderline personality disorder is repeated claims of illness. Hospital records indicate D.D. visited a local emergency room more than 30 times in the course of one year. In light of the record, we find there is clear and convincing evidence of D.D.'s unfitness due to mental impairment and that such impairment will extend beyond a reasonable time.
Respondent's next argument is that the State did not prove it is in the minor's best interest to terminate D.D.'s parental rights. The record clearly indicates this is not the case.
 6 The court must consider both the best interests of the child as well as the rights of the parents. (In re T.G. (1986), 147 Ill. App.3d 484, 488, 498 N.E.2d 370, 373.) Only after finding parental unfitness can the court consider the best interest of the child. (Lael v. Warga (1987), 155 Ill. App.3d 1005, 1012, 508 N.E.2d 1095, 1100.) However, once parental unfitness has been found, all parental rights give way to those interests. T.G., 147 Ill. App.3d at 488, 498 N.E.2d at 373.
The State presented the testimony of Dr. Alexander James, Jr., also a clinical psychologist, who observed that J.B. has clearly suffered severe emotional trauma. He further testified that he found the child to be very delayed in developmental skills and he described her general behavior as chaotic. Dr. James examined J.B. twice and concluded that a return to D.D. would be disastrous. Respondent contends *499 that because J.B. has so many emotional problems, foster parents, as lay people, will be unable to cope with her. Therefore, she should be left in the home. This reasoning leads to the absurd result that, because she is extremely difficult to manage, J.B. should be returned to the home of an unfit parent who is unable to care for even a well-balanced child.
Actually, the record indicates J.B. has shown improvement since leaving D.D.'s custody. In fact, testimony by Dr. James, Lanette Crum, and Sheila Ashby indicates that J.B.'s behavior worsens shortly before and after visits with her mother. Nowhere in the record do we find any contradiction of the aforementioned testimony. In her brief, respondent invokes the strength of a child's bond to a natural parent. While we recognize such a bond usually exists, we must also recognize that it does not automatically insure that the parent will be fit or that the child's best interests will be served by that parent. We are convinced, based on the record, that the trial court's findings are proper as to both D.D.'s unfitness and J.B.'s best interests.
For the aforementioned reasons, we affirm the order of the circuit court of Marion County terminating respondent's parental rights.
Affirmed.
WELCH and CHAPMAN, JJ., concur.