(No. 64553.—

*In re* GABRIEL PRONGER, a Minor (The People of the State of Illinois, Appellant, v. Elizabeth M. Green, Appellee).

*Opinion filed December 21, 1987.*

SIMON, J., specially concurring.

Neil F. Hartigan, Attorney General, of Springfield, and Thomas J. Difanis, State's Attorney, of Urbana (Roma J. Stewart, Solicitor General, and Mark L. Rotert and Terence M. Madsen, Assistant Attorneys General, of Chicago; Chase Leonhard, Assistant State's Attorney; and Robert J. Biderman, of the State's Attorneys Appellate Prosecutor, of Springfield, of counsel), for the People.

Thomas A. Bruno, of Thomas A. Bruno & Associates,

of Urbana, for appellee.

JUSTICE RYAN delivered the opinion of the court:

This appeal arises from an order of the circuit court of Champaign County, which terminated the parental rights of respondent Elizabeth Green, a/k/a Michelle Pronger, and appointed the Illinois Department of Children and Family Services as guardian of Gabriel Pronger, her son. On appeal, respondent challenged the circuit court's jurisdiction to terminate her parental rights, and the appellate court vacated the termination order for want of jurisdiction. (148 Ill. App. 3d 311.) We granted the State's petition for leave to appeal, and we now reverse.

The proceedings in this case date back to April 21, 1983, when an initial hearing was held on a petition for shelter care for Gabriel. At the hearing the circuit court appointed the Champaign County public defender as attorney and guardian *ad litem* for Gabriel. The respondent appeared personally and was represented by counsel, and all parties waived the presence of Gabriel, who was five months old at the time. An investigator with the Department of Children and Family Services (DCFS) testified that she had investigated a neighbor's report that Gabriel had been left unattended for approximately three hours on April 13, 1983. The investigator testified that she interviewed the respondent regarding the incident on April 14 and was told by the respondent that the child had been left in the care of another person. The investigator also testified that respondent's home had a strong offensive odor, that the kitchen was dirty and full of dishes, and that respondent was washing a dirty diaper in the sink with a toothbrush.

Based on the evidence adduced at this hearing, the circuit court found that there was an immediate need for shelter care for Gabriel. However, the court vacated the

shelter care order on the condition that respondent would cooperate with the DCFS. At a subsequent hearing on May 26, 1983, the court heard evidence that respondent was cooperating with the DCFS. The parties agreed to a six-month continuance under court supervision, and the cause was continued until November 29, 1983.

A supplemental petition was filed on July 7, 1983, alleging that Gabriel was not receiving proper care due to the mental illness of respondent. At a hearing held on the same day, it was determined that Gabriel was in the custody of officials in Kentucky. The court ordered shelter care and appointed the DCFS temporary custodian of Gabriel for the purpose of securing his return to Illinois. At a subsequent hearing, respondent testified that she had taken Gabriel to a commune in Tennessee and then to Kentucky because a woman whom she had met informally had told respondent that she had overheard two women talking about taking Gabriel away and locking respondent up.

On December 1, 1983, an adjudicatory hearing was held on a second supplemental petition alleging that Gabriel was neglected. A former neighbor testified that respondent's apartment was messy and frequently smelled of dirty diapers. She also testified about the incident where Gabriel was left at home alone for several hours. Psychiatrist Arthur R. Traugott testified regarding his examination of respondent at his office on October 17, 1983. Dr. Traugott testified that respondent had previously been hospitalized in mental health institutions approximately 23 times and that these hospitalizations revealed a chronic psychiatric illness spanning the past 10 years. Dr. Traugott testified that, based on his expertise, a review of respondent's history, and his examination and observation of respondent, it was his opinion that respondent suffered from a psychotic thought disorder

and delusional thinking. Dr. Traugott also testified that respondent's prognosis was poor, that her disorder was unlikely to respond to treatment and was likely to get worse, and that he doubted respondent had the ability to care for a growing child. Dr. Joseph Williams, a clinical psychologist, also testified for the State. Based on psychological testing and an interview with respondent in June of 1985, Dr. Williams testified that respondent was an emotionally explosive person who would be easily agitated by even light stress. He testified that significant stress would cause her to become verbally aggressive and lose control. Dr. Williams diagnosed respondent as suffering from a borderline personality disorder and a schizotypal personality disorder with paranoid tendencies, both of which would impair her ability to function as a parent on an everyday level.

In addition to the testimony of the psychiatrist and psychologist, two police officers testified about an incident where respondent attempted to take two babies from strollers at a Sweet Corn Festival, informing their families that she intended to adopt the babies. The police officers also testified to respondent's bizarre behavior upon being arrested following this incident. At the conclusion of the hearing, the circuit court found that the environment provided for Gabriel by respondent was injurious to the infant's welfare, adjudged Gabriel a dependent and neglected minor, and made the infant a ward of the court.

On February 23, 1984, the circuit court ordered that custody of Gabriel remain with the DCFS and that the guardian establish a regular schedule of extended visits for the child in respondent's home. On March 8, 1984, a hearing was held on an emergency petition to modify visitation. At this hearing, an employee of the DCFS testified that respondent had made numerous threatening telephone calls to the witness after a visit with Gabriel

had to be cancelled because of inclement weather. The witness also described an incident where respondent had physically threatened a caseworker during a scheduled meeting with respondent. The caseworker involved in the incident also testified, stating that respondent had backed her up against a wall and yelled at her while swinging her arms around in the air. The caseworker testified that she was concerned for her own safety during the incident. At the conclusion of the hearing, the court ordered that all future visitation between respondent and Gabriel occur in the DCFS offices.

A review hearing was held on June 26, 1984, at which the court heard evidence that respondent had moved nine times in the past three months without informing the DCFS. The court also heard evidence that during respondent's last visit with Gabriel she became angry with the child and grabbed him, and the police had to be called to intervene. The court continued its order of supervised visits at DCFS offices. The next review hearing was held on November 28, 1984. At this time respondent was residing in Colorado, and her attorney had been unable to contact her.

In all there were 15 hearings relating to this case between April 21, 1983, and May 21, 1985. It is undisputed that the minor child was not personally served with summons prior to any of these hearings, although he was represented by the guardian *ad litem* at all stages of the proceedings.

On May 29, 1985, a hearing was held on the State's supplemental petition which alleged that the respondent was an unfit parent and which sought termination of her parental rights. Gabriel was personally served with summons at this time. The circuit court entered an order on September 9, 1985, terminating respondent's parental rights and continuing guardianship in the Department of Children and Family Services. Respondent appealed

from this order, arguing for the first time before the appellate court that the circuit court lacked jurisdiction to terminate her parental rights due to the State's failure to personally serve the infant minor during prior stages of the proceedings. Respondent also argued that the circuit court's rulings that she was an unfit parent and that she was unable to discharge her parental responsibilities due to her mental illness were not supported by the evidence. Because the appellate court concluded that the circuit court lacked jurisdiction to terminate respondent's parental rights, it did not reach the issue of the sufficiency of the evidence.

Section 4—3 of the Juvenile Court Act (Ill. Rev. Stat. 1985, ch. 37, par. 4—3) addresses the service of summons in a juvenile case. At the time of the initial petition in the interest of Gabriel, section 4—3 required that "[t]he summons shall be directed to the minor and to each person named as a respondent in the petition." (Ill. Rev. Stat. 1983, ch. 37, par. 704—3). Effective January 12, 1987, section 4—3 was amended to require that "[t]he summons shall be directed to the minor's legal guardian or custodian and to each person named as a respondent in the petition." Ill. Rev. Stat., 1987 Supp., ch. 37, par. 704—3 (Pub. Act 84—1460, §1, eff. Jan. 12, 1987).

The threshold issue in this case is whether section 4—3 requires the personal service of summons upon minors in juvenile neglect proceedings. The State argues that the failure to serve the infant minor did not defeat the circuit court's jurisdiction, since the court appointed a guardian *ad litem* and the guardian *ad litem* was served and appeared on behalf of the minor at all subsequent proceedings. Respondent relies on two appellate court cases, *In re Crouch* (1985), 131 Ill. App. 3d 694, and *In re Day* (1985), 138 Ill. App. 3d 783, both of which held that failure to give notice to minors as known respond-

ents in juvenile proceedings deprived the trial court of jurisdiction. The State points out that under the wording of the amended version of section 4—3, summons must be directed to the minor's legal guardian, rather than to the minor. However, since the amendment to section 4— 3 became effective after the appellate court's decision in this case, we must determine the effect of this amendment on these proceedings.

The primary function of a court in construing a statute is to give effect to the intent of the legislature. (*People v. Beam* (1979), 74 Ill. 2d 240, 242.) In determining the intent of the legislature, we are not confined to a literal examination of the language of the statute. It is proper to consider both the history and course of the legislation (*People v. Beam* (1979), 74 Ill. 2d 240, 243; *People ex rel. Cason v. Ring* (1968), 41 Ill. 2d 305, 310), and subsequent amendments to the statute (*Western National Bank v. Village of Kildeer* (1960), 19 Ill. 2d 342, 353-54).

In the case now before us, the 1987 amendment to section 4—3 clearly does not require the service of summons upon a minor in a juvenile neglect proceeding. Instead, the amended section 4—3 allows for service upon the child's legal guardian or custodian. An examination of the transcripts of the debate in the House of Representatives prior to passage of House Bill 2785, which contained the amendment to section 4—3 (referred to in the transcripts as amendment No. 2), is instructive. Representative Bowman, sponsor of House Bill 2785, in describing the functions of the bill, stated that it includes clarifying language on the service of summons. (84th Ill. Gen. Assem., House Proceedings, June 30, 1986, at 173.) He reminded his colleagues that "this is the Bill that clears up a very serious problem that was developed by a Supreme Court decision, the People re Day." (84th Ill. Gen. Assem., House Proceedings, June 30, 1986, at 173.)

Representative Bowman also stated that "Amendment No. 2, takes care of a pressing problem that was created when the State Supreme Court overturned a lower court decision for failure to serve service [*sic*—notice] on a two month old infant" (84th Ill. Gen. Assem., House Proceedings, May 15, 1986, at 42), and that the amendment "would permit services [*sic*] summons on the ... an infant agent, such as, an attorney or guardian at [*sic*] litem or other officials of the state acting on behalf of the child." (84th Ill. Gen. Assem., House Proceedings, June 30, 1986, at 173.) (We note that throughout the debates on this bill Representative Bowman, when referring to the opinion in *In re Day*, mistakenly identified it as a supreme court decision when it was actually a decision of the appellate court.) Representative Bowman further clarified the purpose of the amendment by stating that "we are not limiting the service requirement. We are just saying that it can be discharged satisfactorily under the law by providing service to a representative ... a court appointed representative of the minor." 84th Ill. Gen. Assem., House Proceedings, May 15, 1986, at 43-44.

We conclude, based on the amendment of section 4—3 in response to the appellate court's opinion in *In re Day* and on the stated intent of the legislature in passing the amendment, that the amendment was intended to be applied retroactively. The legislature clearly felt that the *Day* court had misinterpreted section 4—3, and it sought to correct the error so that its goal of protecting children would not be defeated. 84th Ill. Gen. Assem., House Proceedings, May 15, 1986, at 43.

Whether an amendment to a statute may be deemed to be retroactive depends generally upon whether it relates to substantive rights or whether it affects merely the remedy or a matter of procedure. (*Dworak v. Tempel* (1959), 17 Ill. 2d 181, 187; *Orlicki v. McCarthy* (1954), 4

Ill. 2d 342.) Generally, amendments relating to substantive rights must be applied prospectively (*Dworak v. Tempel* (1959), 17 Ill. 2d 181, 184); however, amendments relating to the remedy or a matter of procedure are generally applied retroactively (*Orlicki v. McCarthy* (1954), 4 Ill. 2d 342, 347-48). This distinction between substantive and procedure matters was incorporated in section 4 of the statute relating to statutory construction (Ill. Rev. Stat. 1985, ch. 1, par. 1103 (formerly Ill. Rev. Stat. 1977, ch. 131, par. 4)).

In *Orlicki v. McCarthy*, the court noted that section 4 incorporated this distinction by quoting the relevant parts of that section of the statute:

> " 'No new law shall be construed to repeal a former law, *** as to any act done, *** or any right accrued, or claim arising under the former law, or in any way whatever to affect any *** act *** done, *** or any right accrued, or claim arising before the new law takes effect, save only that the proceedings thereafter shall conform, so far as practicable, to the laws in force at the time of such proceeding.' " *Orlicki v. McCarthy* (1954), 4 Ill. 2d 342, 346.

This court has held that when a change in law affects only the remedy or the law of procedure, a right of action will be enforced under the new procedure without regard to whether it accrued before or after the change in the law, and without regard to whether or not suit had been instituted. (*Ogdon v. Gianakos* (1953), 415 Ill. 591, 597.) In *Ogdon*, this court held that the manner of service of process is merely a step in obtaining jurisdiction of a person after he has been made a party to a suit. It is therefore a matter of practice or procedure and not a matter of substantive law. In *Ogdon*, the plaintiff had filed a suit for personal injuries, and a summons was issued on November 15, 1949, which was returned showing the defendant not found. An alias summons was issued on August 4, 1951, and plaintiff filed an affidavit

stating that the defendant had been a resident of Illinois on the date of the injury but had since left the State. After the original action had been filed, the General Assembly adopted section 20a of the Motor Vehicle Act (Ill. Rev. Stat. 1951, ch. 95½, par. 23), which provided for substitute service on nonresident defendants by obtaining service on the Secretary of State. This court applied the amendment retroactively and held that service on the Secretary of State conferred jurisdiction over the person of the defendant.

This court has held that when a change in law affects only the remedy or the law of procedure, a right of action, will be enforced under the new procedure without regard to whether it accrued before or after the change in the law, and without regard to whether or not suit had been instituted. (*Ogdon v. Gianakos* (1953), 415 Ill. 591, 597.) In *Ogdon*, this court held that the manner of service of process is merely a step in obtaining jurisdiction of a person after he has been made a party to a suit. It is therefore a matter of practice or procedure and not a matter of substantive law. In *Ogdon*, the plaintiff had filed a suit for personal injuries, and a summons was issued on November 15, 1949, which was returned showing the defendant not found. An alias summons was issued on August 4, 1951, and plaintiff filed an affidavit stating that the defendant had been a resident of Illinois on the date of the injury but had since left the State. After the original action had been filed, the General Assembly adopted section 20a of the Motor Vehicle Act (Ill. Rev. Stat. 1951, ch. 95½, par. 23), which provided for substitute service on nonresident defendants by obtaining service on the Secretary of State. This court applied the amendment retroactively and held that service on the Secretary of State conferred jurisdiction over the person of the defendant.

In our case, at the time the original proceeding was instituted, service was not had upon the minor in the manner required by the statute then in effect. However, the manner in which the court, at that time, attempted to gain jurisdiction over the minor conformed to the method of service provided in the amendment which became effective in 1987. The proceedings in our case differ from those in *Ogdon*, where service on the defendant was had after the effective date of the amendment, whereas in our case service in the manner later provided for in the amendment was had before its effective date. However, in view of the facts of this case, we find that we should not reverse the trial court. If we were to find that the trial court did not have jurisdiction of the minor at the time it declared him to be a ward of the court, proceedings would have to be reinstituted. In the new proceedings, since service of process is a matter of procedure, the amendment to section 4—3 would apply and service would be had upon the representative of the minor, which is exactly the way that service was had in the original proceeding. In our case the minor's interest was protected at every step in the proceedings by the participation of his legal representative. There has been no showing, indeed it has not been argued, that substantial interests have been prejudiced by the failure to obtain personal service on the minor in the original proceeding in the manner provided by statute. See 2 A. Sutherland, Statutory Construction sec. 41.08, at 392 (4th ed. 1986).

From the legislative debates quoted above, it is plain that the purpose of the amendment was to overcome the effect of the holdings of the appellate court in *In re Crouch* and *In re Day*, which are cases relied upon by the appellate court in our case. In view of the nature of these proceedings and the purpose of the amendment as stated in the legislative debates, the amendment to section 4—3 should be considered in the nature of curative

legislation, validating the service of process on a minor where the service of process conformed to the provisions of the amendment but was had before its effective date, provided final judgment has not been rendered. (See *People v. Benton* (1921), 301 Ill. 32; *Worley v. Idleman* (1918), 285 Ill. 214; 2 A. Sutherland, Statutory Construction sec. 41.11 (4th ed. 1986).) We hold that the trial court had jurisdiction of the minor and that the failure to serve notice in the manner provided by statute did not render the subsequent declaration with regard to respondent's parental rights void.

We now turn to the issue of whether the circuit court's conclusion that respondent was an unfit parent was supported by clear and convincing evidence. The circuit court found that respondent was an unfit person within the definition set forth in section 1 of the Adoption Act. (Ill. Rev. Stat. 1983, ch. 40, par. 1501.) Section 1 provides in part as follows:

"D. 'Unfit person' means any person whom the court shall find to be unfit to have a child, without regard to the likelihood that the child will be placed for adoption, the grounds of such unfitness being any one or more of the following:

* * *

(m) failure by a parent to make reasonable efforts to correct the conditions which were the basis for the removal of the child from such parent, or to make reasonable progress toward the return of the child to such parent within 12 months after an adjudication of neglected minor under Section 2—4 or dependent minor under Section 2—5 of the Juvenile Court Act;

* * *

(p) inability to discharge parental responsibilities supported by competent evidence from a psychiatrist or clinical psychologist of mental impairment, mental illness or mental retardation as defined in Section 1—116 of the Mental Health and Developmental Disabilities Code, or

developmental disability as defined in Section 1—106 of that Code, and there is sufficient justification to believe that such inability to discharge parental responsibilities shall extend beyond a reasonable time period."

The circuit court found that respondent was unable to discharge parental responsibilities due to mental impairment and a mental illness, that there was sufficient justification to believe that such inability to discharge parental responsibilities would extend beyond a reasonable time period and that she had failed to make reasonable progress toward the return of Gabriel within 12 months after he was adjudicated a neglected and dependent minor.

The unfitness of a parent must be proved by clear and convincing evidence. (*In re Dixon* (1980), 81 Ill. App. 3d 493, 502.) The trial court's findings should be given great deference, since the trial court's opportunity to view and evaluate the parties and their testimony is superior to that of a reviewing court. *In re Brown* (1981), 86 Ill. 2d 147, 152.

In this case, our review of the record affirms the trial court's conclusions. The record contains overwhelming evidence of respondent's bizarre and delusional beliefs and behavior. In addition, the testimony of a psychiatrist and a psychologist supports the conclusions that respondent's mental impairment would prevent her from giving proper care to a child and that her prognosis for improvement is poor. The record also contains the testimony of numerous DCFS advocates and caseworkers regarding respondent's unwillingness to schedule and attend visits with Gabriel, her failure to contact the DCFS regarding address changes and Gabriel's progress, and her inability to make realistic plans for Gabriel's return to her home. We conclude that the circuit court's finding of unfitness is supported by clear and convincing evi-

dence. The circuit court of Champaign County is affirmed. The judgment of the appellate court is reversed.

*Circuit court affirmed;*
*appellate court reversed.*

JUSTICE SIMON, specially concurring:

I concur in the court's conclusion but not in the reasoning leading to that conclusion. I do not think it is necessary to consider whether the amendment to the statute is retroactive in order to resolve the question presented here. Nor is it necessary to label the amendment "curative" in order to justify service in this case. My view is that we are venturing into uncharted areas by deciding that the legislature is authorized, in the name of curative legislation, to affect the outcome of a judicial action pending prior to the enactment by approving procedures followed prior to the enactment. I submit that there is a much less circuitous path to the conclusion the majority reaches.

The majority approves of the service of summons on Gabriel which occurred prior to the May 29, 1985, hearing. That service is the significant event for purposes of the issue raised in this appeal—termination of parental rights—as far as I am concerned. After that service was completed none of the parties objected to any of the previous proceedings, including the prior judicial declaration that Gabriel was a ward of the court. From that point on I would regard the parties as having waived objections to orders previously entered. (See *In re J.W.* (1981), 87 Ill. 2d 56, 62 (where mother of juvenile appeared in court and actively participated in the proceedings without objection, she waived formal service of process and submitted to the jurisdiction of the court).) Moreover, it is a questionable practice to permit the respondent, Gabriel's parent, to assert that the circuit court had no jurisdiction over Gabriel when Gabriel, through his court

appointed guardian *ad litem*, does not contest the court's jurisdiction over him and is apparently willing to waive formal service of process.

In any event, proper service was effected and jurisdiction vested in the circuit court for the termination proceedings at issue in this case. It is clear that we can reach the same result the majority does without the necessity of applying the amendment to the statute as a "curative" effort.