*In re* M.L.R., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. M.R., Respondent-Appellant).—*In re* M.K.R., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. M.R., Respondent-Appellant).

Fifth District   Nos. 5—88—0560, 5—88—0561 cons.

Opinion filed December 5, 1989.

Steve W. Quinn, Public Defender, of Salem, for appellant.

William R. Hoffeditz, Special Prosecutor, of Mt. Vernon (Kenneth R. Boyle, Stephen E. Norris, and Debra A. Buchman, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE CHAPMAN delivered the opinion of the court:

The parental rights of M.R., mother of M.L.R. and M.K.R., were terminated on August 17, 1988, pursuant to order of the circuit court of Marion County. M.R., the respondent in this consolidated appeal, raises two issues for our review. The first issue is whether proper ser-

vice of process was made on the minor M.L.R. The second issue is whether the circuit court's finding that respondent was an unfit parent was supported by clear and convincing evidence.

M.R. argues that the circuit court did not have jurisdiction of the proceedings at the termination hearing since proper service of process had not been made on M.L.R. It is undisputed that the petitions to terminate parental rights as to each child, filed June 23, 1986, were served upon the Department of Children and Family Services. Service was not made personally on each child. At the time the petitions were filed, M.L.R. was nine years of age, and M.K.R. was three years of age. Service of process as to M.K.R. is not contested by the respondent on this appeal.

At the time the petition in question was filed, section 4—3 of the Juvenile Court Act (Ill. Rev. Stat. 1985, ch. 37, par. 704—3) required that "[t]he summons shall be directed to the minor and to each person named as a respondent in the petition." The statute was later amended, effective January 12, 1987, to require that "[t]he summons shall be directed to the minor's legal guardian or custodian and to each person named as a respondent in the petition." (Ill. Rev. Stat., 1987 Supp., ch. 37, par. 704—3 (Pub. Act 84—1460 §1, eff. Jan. 12, 1987).) Our supreme court in *In re Pronger* (1987), 118 Ill. 2d 512, 517 N.E.2d 1076, held that this 1987 amendment to section 4—3 excuses service of summons upon a minor in a juvenile neglect proceeding. The *Pronger* court held that the section as amended allowed for service upon the child's legal guardian or custodian to establish jurisdiction. The court's decision was applied retroactively to the effective date of section 4—3 prior to that section's amendment. Subsequent to the *Pronger* decision, the statute was again amended to provide:

> "The summons shall be directed to the minor's legal guardian or custodian and to each person named as a respondent in the petition, except that summons need not be directed to a minor respondent under 8 years of age for whom the court appoints a guardian ad litem if the guardian ad litem appears on behalf of the minor in any proceeding under this Act." Ill. Rev. Stat., 1988 Supp., ch. 37, par. 804—14.

■ In the case at bar respondent urges us to adopt the reasoning of the court in *In re D.S.* (1988), 168 Ill. App. 3d 76, 522 N.E.2d 625. That court held that the effect of section 4—14 was to reinstate the requirement of service on the minor respondent, at least as to minors eight years of age or older. We decline to adopt the holding in that case. We choose instead to follow the rationale of the court in *In re R.W.* (1988), 176 Ill. App. 3d 868, 531 N.E.2d 924, where the court

thoroughly examined the legislative debates to discern the legislature's intent in enacting section 4—14. We believe that where a guardian *ad litem* was appointed, was served with process, and appeared on behalf of the minor, no useful purpose as contemplated by the legislature would be served by requiring personal service on the minor.

We now turn to the issue of whether the circuit court's conclusion that respondent was an unfit parent was supported by clear and convincing evidence.

M.L.R. was born January 27, 1977. On March 17, 1983, a petition for adjudication of wardship was filed by the Department of Children and Family Services of the State of Illinois (hereinafter, Department) alleging that the child was neglected or dependent. On March 18, 1983, M.L.R. was placed in the temporary custody of the Department. An adjudicatory hearing was conducted May 12, 1983, on behalf of M.L.R. At that hearing evidence was adduced that on March 11, 1983, police officer Mitchell McClaren received a call concerning an incident at M.R.'s home. Upon arriving there he found M.R. on the sofa with M.L.R. on her lap. M.R. was holding a steak knife to the child's abdomen. Officer McClaren testified that M.R. continued to maintain a threatening hold over the child for 30 minutes. It was not until M.R. "made some sort of move" that J.R., M.R.'s husband, was able to grab the knife away from her.

J.R. testified at the adjudicatory hearing that M.R. has a history of emotional or mental problems. He testified that at the time of the incident his wife was pregnant and was experiencing problems with the pregnancy. She was in great pain, but neither he nor his wife could find a doctor who would treat her. Every doctor they contacted to provide obstetrical care refused to render services on behalf of M.R. M.R. testified that she was in so much pain and so desperate that she grabbed M.L.R.

An order of adjudication was entered May 17, 1983, finding M.L.R. to be neglected by reason of physical abuse. The court entered an order on August 9, 1983, placing custody of M.L.R. with the Department.

M.K.R. was born April 29, 1983. On January 13, 1984, a petition for adjudication of wardship was filed by the Department alleging that M.K.R. was neglected "due to the fact that she has had a red and raw genital area and a rash covering her genital area and buttocks for an extended period of over 5½ months." That same day a hearing was held and M.K.R. was placed in the temporary custody of the Department. An order of adjudication was entered December 6,

1984, finding M.K.R. to be neglected by reason of physical harm. The court entered an order at that time placing custody of the minor with the Department, where she remains in custody at this time.

Petitions to terminate the parental rights of M.R. and J.R. as to both children were filed on June 23, 1986. J.R., the natural father of M.L.R. and M.K.R., executed final and irrevocable surrenders for purposes of adoption as to each of M.L.R. and M.K.R. on September 4, 1986. The hearing was held on the petition to terminate parental rights on August 5, 1988. M.R. attended that hearing.

At the hearing Dr. Rachel Tompkins, a psychologist, testified that she examined M.R. at the Alton Mental Health Center in August of 1987, and that she spent approximately six to seven hours conducting an interview and tests of M.R. before making her diagnosis. Dr. Tompkins testified that as regards M.R.'s capacity to parent, based upon her diagnosis, she saw M.R. as "quite deficient in many of the qualities, such as good judgment, frustration tolerance and willingness to take responsibility for one's own behavior, as well as the needs of others, which contribute to parenting capability."

Although Dr. Tompkins testified that she only saw M.R. at the one evaluation conducted in August of 1987, and testified that she never observed M.R. interact with her own children or with any children, Dr. Tompkins testified as to her opinion of whether M.R.'s ability to parent would change in the future. Dr. Tompkins testified that "the characteristics would be unlikely to change without a committed involvement in very long term psychotherapy, if then." She explained, "they can be considered to endure for such a length of time that she will probably not be able to assume parental responsibility in an effective manner while her children are young and in need of such care."

Dr. Saber Girgis, a psychiatrist, also testified at the hearing. He testified that M.R. had been a patient of his since October of 1985. When M.R. was first admitted to the mental health facility in October 1985, he diagnosed her as a schizophrenic, chronic undifferentiated type. He prescribed medication and was successful in stabilizing her condition. Dr. Girgis testified that when he last examined M.R., one week prior to April 2, 1988, she was symptom free and in complete remission, which meant that M.R. had no delusions, hallucinations or suspicions.

When asked whether M.R.'s present condition would be likely to change in the future, Dr. Girgis testified that "some schizophrenics can live a lifetime without relapse, and some are relapsed very frequently, and it also depends on how much stress they are exposed to. If they are exposed to a highly stressful environment, they break eas-

ily." Dr. Girgis testified that an example of such an environment would be "if the child antagonizes you, in general, or if the child will not accept you as a parent, this, in itself, is highly stressful."

The doctor testified that if M.R. continues to take her medication on a regular basis, and she continues to see a psychiatrist, he believed she could "stay out in good shape." He explained, however, that whether a person with M.R.'s diagnosis is able to deal with large amounts of stress in an effective manner "depends on how much support she is getting. *** If she gets a lot of support, which can equalize or neutralize the effect of the stress, she can cope. If there is no support, and the stressor is overwhelming, she would react adversely and even shrink back down, so it depends on the interplay of two factors. One of them is stress, and the other is support."

The circuit court found that respondent was unable to discharge her parental responsibilities due to mental illness, that there was sufficient justification to believe that such inability would extend beyond a reasonable time period and that an inordinate amount of time cannot be allowed to pass before the minor finds a stable home. Our review of the record confirms the trial court's decision.

It is clear that respondent is mentally impaired. Respondent contends, however, that the trial court's conclusion is incorrect since the testimony of Dr. Saber Girgis was that if M.R. stays under close supervision of a psychiatrist, she would be able to deal with highly stressful situations, including discharge of her parental duties.

■■■■ A parent's right to a minor child may be terminated by a trial court after a finding that the child has been neglected under the Juvenile Court Act and after the parent has been found unfit under the Adoption Act. (Ill. Rev. Stat. 1987, ch. 37, par. 802—3; ch. 40, par. 1501(D); *In re Devine* (1980), 81 Ill. App. 3d 314, 321-22, 401 N.E.2d 616, 621-22.) Section 1(D)(p) of the Adoption Act (Ill. Rev. Stat. 1987, ch. 40, par. 1501(D)(p)) provides the standard for finding the parent unfit to have a child based on mental inabilities:

"[I]nability to discharge parental responsibilities supported by competent evidence from a psychiatrist or clinical psychologist of mental impairment, mental illness or mental retardation *** and there is sufficient justification to believe that such inability to discharge parental responsibilities shall extend beyond a reasonable time period."

The unfitness of a parent must be proven by clear and convincing evidence. (*In re Dixon* (1980), 81 Ill. App. 3d 493, 501, 401 N.E.2d 591, 597; *In re Love* (1977), 50 Ill. App. 3d 1018, 1023, 366 N.E.2d 139, 142.) The finding of the trial court should be given great deference

since the trial court's opportunity to view and evaluate the parties and their testimony is superior to that of a reviewing court. *In re Brown* (1981), 86 Ill. 2d 147, 152, 427 N.E.2d 84, 87.

The two doctors who testified gave similarly negative prognoses for respondent's future potential of being a capable parent. Dr. Tompkins opined that M.R.'s inability to assume potential responsibility in an effective manner would be unlikely to change without a committed involvement in long-term psychotherapy, if at all. Dr. Girgis testified that M.R.'s ability to parent and to deal with the stressful environment which parenting sometimes exudes would depend on the interplay of stress and support M.R. experiences.

We find that the testimony by both doctors was sufficient justification for the trial court's finding that respondent's mental impairment would extend beyond a reasonable time. An inordinate amount of time cannot be allowed to pass before the minors find a stable home. (*In re E.J.F.* (1987), 161 Ill. App. 3d 325, 331, 514 N.E.2d 544, 549.) For the foregoing reasons we conclude that the circuit court's finding of unfitness is supported by clear and convincing evidence. The circuit court of Marion County is affirmed.

Affirmed.

WELCH, P.J., and HOWERTON, J., concur.