578 N.E.2d 306 (1991)
218 Ill. App.3d 431
161 Ill.Dec. 179
In the Interest of K.S.T., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. Florence Williams, Respondent-Appellant).
No. 4-91-0114.
Appellate Court of Illinois, Fourth District.
August 29, 1991.
*307 Robert E. McIntire, Public Defender, Danville, for respondent-appellant.
Craig H. DeArmond, State's Atty., Danville, Kenneth R. Boyle, Director, State's Attys. Appellate Prosecutor, Robert J. Biderman, Deputy Director, Rebecca L. White, Staff Atty., Springfield, for petitioner-appellee.
Michael D. Clary, Danville, Guardian Ad Litem.
Justice KNECHT delivered the opinion of the court:
On January 10, 1991, the Vermilion County circuit court terminated Florence Williams' parental rights to her daughter, K.S.T., after a finding of unfitness and inability to discharge parental responsibilities due to mental illness. Florence appeals, arguing the State failed to establish unfitness. We affirm.
Florence is 37 years old and suffers from paranoid schizophrenia. She married Charles Williams and had three children from this union who are still living. Florence and Charles divorced in 1974 and Charles retained custody of the children. Florence has since given birth to three other children, D.W., A.S., and K.S.T. The Department of Children and Family Services (DCFS) maintains legal responsibility for each of these three children. Florence's parental rights as to D.W. and A.S. were terminated earlier. Florence has not been able to provide custodial care for any of her children. K.S.T.'s father has schizophrenia. He chose to execute a final and irrevocable surrender of his parental rights on December 21, 1989.
Florence has been receiving treatment for mental illness since 1976 with numerous psychiatric hospitalizations, both voluntary and involuntary, from 1976 to 1989. Her most recent hospitalization occurred in May 1989, following K.S.T.'s birth. Florence was actively psychotic at the time, paranoid, and experiencing auditory hallucinations. She took knives to the hospital for protection and had to be restrained. She did not take Prolixin Enanthate, an antipsychotic medication, during her pregnancy. DCFS took K.S.T. from Florence two days after her birth because Florence was actively psychotic and because of her prior mental-health history.
Florence receives care at Crosspoint Human Services in Danville, Illinois. She maintains her own apartment and prepares her own meals, but is otherwise completely dependent on Crosspoint to manage her financial and medical needs. Testimony from Florence's Crosspoint caseworker indicates Florence has difficulty managing the money she is given each week and had to close a checking account after writing a number of checks for which she had insufficient funds.
Crosspoint provided supervised visitation for Florence and K.S.T. for one hour once a week. Prior to June 1990, Florence did not attend these sessions regularly. She usually left visitation sessions early due to anxiety and frustration. She became frustrated if the baby cried for prolonged periods. With direction, Florence behaved appropriately during visitation and treated K.S.T. gently and lovingly. DCFS and Crosspoint caseworkers indicated returning K.S.T. to Florence was never a part of Florence's treatment plan because no one believed Florence could care for the child.
This assessment was based in part on how Florence had cared for A.S. After A.S.'s birth, Florence fed him raspberry sherbet, held him up by his arms because she believed he was not breathing, and held him under the sheets and held his nose. She believed "a baby's bones are like gristle and you can reshape the facial structure by pressing the nose it would make the nose thinner * * *." K.S.T. was adjudicated a neglected and dependent child due to the mental illnesses of her natural parents *308 and their inability to provide proper care for her. Following a dispositional hearing, K.S.T. was made a ward of the court and custody was placed with DCFS.
The hearing to terminate Florence's parental rights was held October 4 and 5, 1990. Dr. Robert Talbert, Florence's psychiatrist, testified Florence has periods of confusion, auditory hallucinations, and inappropriate moodiness, even when she receives Prolixin regularly. Dr. Talbert has been treating Florence at Crosspoint since 1982 or 1983 and indicated her condition has remained the same during the periods in which she takes medication regularly. He testified Florence does not handle stress well and therefore finds everyday decisions difficult. He expected her condition to remain unchanged and to last throughout her life. Finally he reported Florence had, at one point, abused a medication prescribed to control the side effects of Prolixin.
Terry Christian, Florence's Crosspoint caseworker, testified Crosspoint is Florence's representative payee and handles her financial affairs. She testified to Florence's difficulty managing money and indicated Florence was not responsible in keeping appointments for Prolixin injections until they were scheduled on the day Florence received her weekly check. Christian had seen Florence upset and angered over small misunderstandings. She stated Florence stopped attending a day treatment program because she did not believe she was benefitting from it and simply did not want to attend. Florence has difficulty concentrating and her impaired judgment affects her ability to care for herself. For example, Christian indicated she had seen Florence dressed inappropriately for weather conditions, though Florence owned appropriate clothing.
Dr. Alan Jacobs, a psychologist, examined Florence and opined her prognosis was guarded to poor. He did not believe Florence was capable of caring for her children and stated even if she received parenting classes, during psychotic episodes she would be unable to care for herself and K.S.T. and might present a danger to both. Florence told him she had abused alcohol (she drank half a case of beer the night before K.S.T.'s birth) and marijuana, though she denied using marijuana during pregnancy. Dr. Jacobs testified Florence suffers mild long-term memory deficit and occasional mild confusion. Her short-term memory recall is also mildly impaired. He did not recommend returning K.S.T. to Florence.
The court concluded Florence was unfit to discharge parental responsibilities due to her mental illness, in accord with the Adoption Act (Act) (Ill.Rev.Stat.1989, ch. 40, par. 1501(D)(p)). The court also concluded Florence's inability would extend beyond a reasonable period of time. The court terminated Florence's parental rights on January 10, 1991.
The issue on appeal is whether the State proved, by clear and convincing evidence, Florence's unfitness. Section 1(D)(p) of the Act defines an "[u]nfit person" as:
"[A]ny person whom the court shall find to be unfit to have a child * * * the grounds of such unfitness being * * *:
* * * * * *
(p) inability to discharge parental responsibilities supported by competent evidence from a psychiatrist or clinical psychologist of mental impairment, mental illness or mental retardation * * * and there is sufficient justification to believe that such inability to discharge parental responsibilities shall extend beyond a reasonable time period." (Ill.Rev.Stat. 1989, ch. 40, par. 1501(D)(p).)
"An Act approving and adopting the Interstate Compact on Mental Health * * *" defines "[m]ental illness" as "mental disease to such extent that a person so afflicted requires care and treatment for his own welfare, or the welfare of others, or of the community." Ill.Rev.Stat.1989, ch. 91½, par. 50-1, art. II(f).
Under section 1(D)(p) of the Act, the State must produce competent evidence showing the parent has a mental inability sufficient to preclude her from discharging normal parental responsibilities. Second, the State must show there is sufficient justification to find the inability will extend *309 beyond a reasonable time period. (In re E.J.F. (1987), 161 Ill.App.3d 325, 331, 112 Ill.Dec. 881, 885, 514 N.E.2d 544, 548.) The standard of proof in a fitness case is clear and convincing evidence. (In re Brown (1981), 86 Ill.2d 147, 152, 56 Ill.Dec. 4, 7, 427 N.E.2d 84, 87.) The circuit court's finding of unfitness will not be set aside on review unless contrary to the manifest weight of the evidence. (Brown, 86 Ill.2d at 152, 56 Ill.Dec. at 7, 427 N.E.2d at 87.) "The rationale underlying this standard is that the trial court's opportunity to view and evaluate the parties and their testimony is superior to that of a reviewing court. Accordingly, the trial court's findings should be given great deference." (Brown, 86 Ill.2d at 152, 56 Ill.Dec. at 7, 427 N.E.2d at 87; see also In re Pronger (1987), 118 Ill.2d 512, 526, 115 Ill.Dec. 390, 395, 517 N.E.2d 1076, 1081.) A parent can be unfit without fault, as "[a] child is no less exposed to danger * * * because his parent is unable rather than unwilling to give him care." In re Devine (1980), 81 Ill.App.3d 314, 320, 36 Ill.Dec. 775, 780, 401 N.E.2d 616, 621.
Florence first argues the State failed to establish her schizophrenia precluded her from discharging parental responsibilities. She relies on In re N.F. (1989), 178 Ill.App.3d 662, 127 Ill.Dec. 870, 533 N.E.2d 952, and In re M.L.R. (1989), 191 Ill.App.3d 607, 138 Ill.Dec. 837, 548 N.E.2d 67. The courts in those cases upheld determinations of parental unfitness based on the testimony of psychiatrists and psychologists. Two mental-health professionals testified in each case and the prognoses offered were consistent: the natural parent(s) were incapable of caring for their children. Florence argues Dr. Talbert and Dr. Jacobs did not render consistent, negative opinions regarding her ability to care for K.S.T.
Dr. Talbert, Florence's psychiatrist since 1982 or 1983, testified he did not know whether Florence was capable of caring for a child because he had never seen her outside the office and did not know how well she handled people outside the office. Dr. Jacobs examined Florence approximately one year before the termination hearing. He testified Florence was incapable of handling parental responsibilities, even if she took parenting classes. He did not recommend placing K.S.T. with Florence.
Florence argues, in effect, the opinion of one health-care professional formed in an examination one year before the termination hearing is not competent evidence upon which to base termination of her parental rights, and falls short of the clear and convincing standard of proof. She also points to testimony by her Crosspoint caseworker indicating she maintained her own apartment, purchased and prepared food, and furnished her apartment without assistance. Her finances are managed by Crosspoint and, thus, will not be mismanaged, and medications are dispensed on a schedule which will preclude future abuse. Her visitation attendance record has improved over time and she has always exhibited appropriate behavior when interacting with the child. She protests the lack of opportunity to prove she can care for K.S.T. and lack of parenting classes.
Although Dr. Talbert did not offer an opinion on Florence's ability to care for K.S.T., he did agree dealing with a child less than two years of age is stressful and stated stress alters Florence's judgment abilities. Prolixin benefits Florence's condition, according to Dr. Talbert, but does not improve her judgment or control her mood swings. Even Florence admitted she might be fine one day only to have "everything go down the drain" the next.
Given the testimony of Drs. Talbert and Jacobs, Florence, and her caseworkers, we conclude the court's finding of inability to discharge parental responsibilities due to mental illness was not against the manifest weight of the evidence.
Florence next argues the State did not establish sufficient justification to believe her inability to discharge parental responsibilities would extend beyond a reasonable time. We disagree. Both Drs. Talbert and Jacobs testified her prognosis was poor. Dr. Talbert testified Florence's schizophrenia is chronic and will last throughout her life. Even with parenting *310 classes, he indicated she could not care for herself or K.S.T. during psychotic episodes. Florence also testified she realized her condition is permanent.
Florence's history of psychiatric hospitalizations, the poor prognosis for improvement, and the testimony she will always suffer from schizophrenia provided sufficient justification for finding her mental illness will extend beyond a reasonable time period.
The order of the court terminating Florence's parental rights is affirmed.
Affirmed.
LUND, P.J., and STEIGMANN, J., concur.