*In re* S.O. *et al.*, Minors (The People of the State of Illinois, Petitioner-Appellee, v. Roland Deford, Respondent-Appellant).

Third District No. 3—94—0611

Opinion filed May 2, 1995.

H. Dean Hamra, of Pekin, for appellant.

Erik I. Blanc, State's Attorney, of Pekin (John X. Breslin and Rita Kennedy Mertel, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HOLDRIDGE delivered the opinion of the court:

On January 23, 1992, the State filed a petition for adjudication of wardship of the minors, S.O., N.D. and C.D., alleging that their father, respondent Roland Deford, had sexually abused S.O. (705 ILCS 405/2—3(2)(iii) (West 1992)). The court granted the State's petition. The State subsequently filed a petition to terminate respondent's parental rights. The court found respondent unfit for failure to make reasonable efforts to correct the conditions that were the basis for the removal of the minors and failure to make reasonable progress toward their return (750 ILCS 50/1(D)(m) (West 1992)). The court granted the State's petition and terminated respondent's parental rights. Respondent appeals. We affirm.

The record establishes that respondent obtained custody of the three minors upon the dissolution of his marriage to their mother, Geraldine, in October of 1990. Geraldine testified that her mother had advised her to talk to S.O. about possible sexual conduct because of an incident in which S.O. had reportedly asked a cousin to "hump"

her. Based on this conversation, Geraldine asked S.O. during a visitation on January 21, 1992, whether anyone had been touching her in wrong places. S.O. said, "Yes," and then admitted that respondent had been molesting her. Geraldine testified that S.O. stated that on several occasions respondent had touched her "privates" with his hand and rubbed his "privates" between her legs, and that "white stuff" that he called "spit" had come out. S.O. told Geraldine that respondent had threatened to kill her if she ever told anyone what he had done.

Based on S.O.'s statements, Geraldine took S.O. to the hospital. S.O. repeated her statements to Deputy Dick Ganschow of the Tazewell County sheriff's department and to Ameen Ashshakoor Azim, a child welfare specialist for the Department of Children and Family Services (DCFS).

At the adjudicatory hearing on May 14, 1992, eight-year-old S.O. testified that respondent had put his hand and his "private" between her legs and had moved up and down on her "private" and made a sound like a bear. Then "white stuff" came out. She stated that this had happened more than two times in the living room and in his bedroom. He told her not to tell anyone.

Testifying on his own behalf, respondent denied any sexual conduct with S.O. Respondent also introduced witnesses who testified that S.O. was angry with him, she wanted to live with her mother, and she had made untrue statements on other occasions.

At the conclusion of the hearing, the court found S.O.'s testimony of abuse believable and respondent's denial unbelievable. Accordingly, the court adjudicated the minors abused and made them wards of the court. The court also ordered respondent to submit to a full psychological evaluation.

At the dispositional hearing of July 15, 1992, the court considered reports of psychological evaluations of S.O. and both parents. At that time, the psychologist recommended that S.O. remain in foster care and that respondent be reevaluated for substance abuse. The psychologist's impressions of respondent's parenting ability were uncertain because of invalid personality test results. The court also considered reports of Catholic Social Service (CSS) caseworker Lisa Sherwood recommending that DCFS be awarded guardianship of the minors and that DCFS be granted authority to return the minors to Geraldine's custody.

At the conclusion of the hearing, the court granted Geraldine custody of N.D. and C.D. and granted respondent supervised visitation with them. The court ordered that S.O. remain in foster care for a few more weeks before returning to Geraldine and that respondent

cooperate with DCFS and sex abuse counseling requirements, with the goal that he could ultimately resume a normal parent-child relationship with the minors.

On December 20, 1993, the State filed its petition to terminate respondent's parental rights. At the hearing on the petition, Brenda Ennis, the children's DCFS caseworker, testified that she had encouraged respondent to attend weekly sex abuse counseling sessions prior to the State's petition. However, respondent attended only 18 sessions between November of 1992 and May 19, 1993. Then he discontinued any participation until after the State filed its petition to terminate his parental rights. Respondent's participation in the sessions was deemed unsatisfactory by his counselor because he had failed to make any progress in addressing his pedophiliac tendencies. The counselor testified that it was not safe for the children to be with respondent.

Respondent testified that he had quit counseling in May of 1993 because he believed his counselor was lying about him to DCFS. He resumed attending the sessions in January of 1994 after learning that he was going to lose his parental rights. Respondent testified that he had admitted doing something wrong, and he understood that children should not be abused. He denied some of the things he was accused of doing, and he disagreed with the diagnosis of his problem as pedophilia. He testified that his problem was "being accused of stuff I don't do."

After taking the cause under advisement, the trial court determined that respondent was unfit pursuant to section 1(D)(m) of the Adoption Act (750 ILCS 50/1(D)(m) (West 1992)).

On July 26, 1994, the court heard testimony concerning the best interests of the children. The testimony established that all three children were living with Geraldine in Galesburg. They were adjusting well to their home with her and had not asked to see respondent. Geraldine believed that it would be in the children's best interests to terminate respondent's parental rights.

Brenda Ennis testified that N.D. and C.D. had been reluctant to attend visitation with respondent during the pendency of the cause. They referred to respondent as "Pete," and they were defiant and disobedient when they returned to Geraldine after the visits. Ennis expressed her opinion that it was in the best interest of the children to sever all contact with respondent. Respondent declined to testify.

After arguments of counsel, the court entered its finding that it was in the best interest of the children to terminate respondent's parental rights. The court reasoned that the children had achieved a stable relationship with their mother and that it was unfair to leave them in limbo with respect to respondent.

On appeal, respondent first argues that his unfitness was not proved by sufficient evidence. We do not agree.

A parent may be found unfit for failure to make reasonable efforts to correct the conditions which were the basis for the removal of the child from the parent, or for failure to make reasonable progress toward the child's return within 12 months after an adjudication under the Juvenile Court Act of 1987 (705 ILCS 405/1—1 *et seq.* (West 1992)). (750 ILCS 50/1(D)(m) (West 1992).) Whether a parent's efforts to correct conditions are reasonable involves a subjective judgment of the particular parent's efforts; however, the reasonableness of a parent's progress toward the child's return is measured objectively by the amount of movement toward the goal of reunification. (*In re L.L.S.* (1991), 218 Ill. App. 3d 444, 577 N.E.2d 1375.) A trial court's finding of parental unfitness must be based on evidence that is clear and convincing. (*In re Adoption of Syck* (1990), 138 Ill. 2d 255, 562 N.E.2d 174.) Once such a finding has been made, it is entitled to great deference, and on review the trial court's finding should be affirmed unless it is contrary to the manifest weight of the evidence. *In re J.B.* (1990), 198 Ill. App. 3d 495, 555 N.E.2d 1198.

In this case, respondent seeks to excuse his poor progress by contending that he was not allowed an opportunity to complete the counselor's two-year program. Respondent's position is unpersuasive. The record clearly and convincingly establishes that respondent's efforts to regain custody of the children from between the date of adjudication and the date of the State's petition to terminate parental rights were minimal and resulted in no measurable progress.

■ Respondent was ordered to undergo sex abuse counseling in July of 1992. He was periodically admonished that participation in weekly sex abuse counseling sessions was required if he was to regain custody of his children. Nonetheless, he failed to take more than passive interest in the 18 sessions he attended between November of 1992 and May of 1993, and he made no progress whatsoever in addressing the issues of pedophilia. Respondent admitted that he only resumed attending the scheduled sessions in January of 1994 because he was told he would lose his parental rights if he did not. Although respondent physically attended sessions after the State filed its petition to terminate his rights, he still failed to make any measurable progress toward accepting responsibility for the underlying problem. According to respondent's sex abuse counselor, respondent's prognosis remained guarded at the time of the hearing on the State's petition in April of 1994.

In our opinion, the trial court's finding of unfitness pursuant to section 1(D)(m) of the Adoption Act is not contrary to the manifest weight of the evidence. Accordingly, we affirm that finding.

Respondent also takes issue with the trial court's finding that it was in the children's best interests to terminate his parental rights. Respondent contends that he was never found to have abused the two younger children, C.D. and N.D., and that he should therefore retain his rights with respect to them. We do not agree.

Once a finding of unfitness is made, all considerations must yield to the best interests of the children. (*In re M.C.* (1990), 197 Ill. App. 3d 802, 555 N.E.2d 111.) The standard of review is whether the trial court's best interest determination is contrary to the manifest weight of the evidence. (*In re I.D.* (1990), 205 Ill. App. 3d 543, 563 N.E.2d 1200.) Obviously, it is not in the best interests of children to be placed in an environment where they would be exposed to a parent's unresolved pedophilic tendencies. Proof of the parent's sexual abuse and unwillingness to resolve sexual issues with respect to one child is sufficient to support a finding that the other children are at risk. See *In re C.R.* (1991), 221 Ill. App. 3d 373, 581 N.E.2d 1202.

█ In this case, the trial court found that all three children were adjusting well to their home with Geraldine, that they expressed no desire to see or visit with respondent, and that it would be unfair to leave the possibility of a renewed relationship with him in limbo. Lacking any foreseeable resolution of respondent's pedophiliac tendencies, the court's conclusion that it was in the best interests of all three children to terminate respondent's parental rights was proper.

The judgment of the circuit court of Tazewell County is affirmed.

Affirmed.

STOUDER, P.J., and McCUSKEY, J., concur.