*In re* Y.B. *et al.*, Minors (The People of the State of Illinois, Petitioner-Appellee, v. Debbie C., Respondent-Appellant).

Third District   No. 3—96—0418

Opinion filed November 20, 1996.

386

Elaine Greek, of Peoria, for appellant.

Kevin W. Lyons, State's Attorney, and Susan K. Lucas, both of Peoria (John X. Breslin and Robert M. Hansen, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE HOLDRIDGE delivered the opinion of the court:

The respondent, Debbie C., appeals from orders finding her an unfit parent and terminating her parental rights. She argues that (1) parental rights to C.B. could not be terminated based on an adjudica-

tion under the "no fault" dependency provision of the Juvenile Court Act of 1987 (705 ILCS 405/2—4(1)(c) (West 1992)); (2) unfitness was not proved by clear and convincing evidence; and (3) the evidence failed to prove that it was in the best interests of the children to terminate her parental rights. For reasons that follow, we reverse and remand with respect to C.B. and affirm in all other respects.

## FACTS

On January 22, 1992, the State filed a petition for adjudication of wardship in two counts, alleging that the minors, Y.B., T.M., J.M. and S.P., were neglected and dependent (705 ILCS 405/2—3, 2—4(1)(a) (West 1992)). Debbie admitted that they were dependent as alleged in count II. Accordingly, the court entered adjudicatory and dispositional orders and directed Debbie to obtain independent housing, attend parenting classes and submit to psychological testing and counseling. The four children were made wards of the court, and guardianship was awarded to the Department of Children and Family Services (DCFS). During the next several months, Debbie obtained a psychological evaluation, completed parenting classes and obtained a four-bedroom apartment. She also gave birth to C.B. DCFS returned the other children to her care on November 2, 1992.

On April 22, 1993, DCFS received a report indicating a risk of physical harm to Y.B. and T.M. On June 11, 1993, Debbie entered a residential treatment program for chemical dependency. She relinquished all of the children to DCFS. Four days later, the State filed a second juvenile petition alleging that C.B. was dependent pursuant to section 2—4(1)(c) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2—4(1)(c) (West 1992)). Debbie denied the petition and moved for return of all five children to her custody. Following a hearing on September 2, 1993, the court adjudicated C.B. dependent. Subsequently, on September 16, the court entered a dispositional order awarding guardianship to DCFS. The court denied Debbie's request for the return of the children, and she was directed to complete a residential substance abuse program and obtain a psychological evaluation.

In its ensuing periodic reviews, DCFS rated Debbie's progress toward the goal of reunification as unsatisfactory for failure to complete chemical dependency treatment. On June 16, 1994, the court ordered Debbie to complete all phases of chemical dependency treatment and to cooperate with DCFS and its designees. The agency's subsequent six-month reports to the court repeated allegations that Debbie had not completed chemical dependency treatment or established a stable home environment. A permanency review order was entered on

October 12, 1995, in which the court found that Debbie had not made reasonable efforts to achieve the DCFS service plan and permanency goals. The court reiterated its order that Debbie complete chemical dependency treatment and cooperate with DCFS and its designees.

On October 27, 1995, the State filed a supplemental petition for termination of parental rights. In counts I and II, the State alleged that Debbie was unfit because she failed to make (1) reasonable efforts to correct the conditions that were the basis for the removal of the minors, and (2) reasonable progress toward their return within 12 months of adjudication. 750 ILCS 50/1(D)(m) (West 1994).

A hearing on the State's supplemental petition was held on January 31, February 7, and March 5, 1996. For the State, Paul Keenan, a direct service supervisor for Catholic Social Services (CSS), testified that he had been involved with the case since September of 1993. Keenan said that Debbie's service plan goals over the years included obtaining appropriate housing, counseling for anger control, chemical dependency treatment and visitation with the children. With few exceptions, Debbie's visitations were successful. Debbie lived in numerous locations throughout the period, returning often to her mother's home. After the children were returned to foster care in June of 1993, she never maintained independent housing for a period longer than six months. At the time of the hearing, Debbie had still not completed any treatment program for chemical dependency. Keenan said that Debbie had completed an intensive counseling program for managing her anger in December of 1995 and was in continuing care at the time of his testimony.

When the hearing resumed on February 7, Patricia Kennedy, Debbie's counseling therapist, testified that she had seen improvement in Debbie's anger control since October of 1995 and estimated that Debbie would need at least three more months to complete the counseling program. Kennedy acknowledged that alcohol dependency remained an unresolved problem for Debbie.

Debbie testified on her own behalf. She said that she knew she has had a problem with alcohol since age 13. Although she admitted having used other drugs, including cocaine, she did not believe she had a drug problem. She stated that she drank more after the children were removed from her care. The last time she drank was around Christmas of 1995, when she had a 40-ounce bottle of beer. She reported this relapse to Patricia Kennedy. At the time of the hearing, Debbie was living at the YWCA.

At the close of all testimony, the court found that both counts of the State's supplemental petition were proved by clear and convincing evidence and entered a finding of unfitness.

On April 3, 1996, the matter proceeded to a best interests hearing. Reports of CSS and Children's Home caseworkers were received into evidence. The reports established that all five of the children suffer from serious emotional problems. At the time of the hearing, Y.B. resided in a therapeutic foster home and suffered from post-traumatic stress disorder. T.M. lived in a specialized foster home and attended school for severely emotionally disturbed children. J.M. was placed in the residential unit of Children's Home. His behavior improved since October of 1995, but he still had episodes of violence. S.P. and C.B. remained together in a specialized foster home. Although the three oldest children, Y.B., T.M. and J.M., remained bonded to Debbie, the children's behavior and Debbie's reactions to them during visitations had continued to deteriorate up to the time of the hearing. Considering all of the unresolved problems that the family had, the caseworkers recommended that it was in the best interests of all of the children to terminate Debbie's parental rights. The State also presented evidence that Debbie had reported another alcohol relapse on the weekend of February 10, 1996.

In her defense, Debbie presented her mother, her CSS caseworker and the fathers of two of the children, all of whom testified that Debbie related well to the children and that there was mutual affection between the children and their mother. Other witnesses included Debbie's parenting class instructor, who testified that Debbie had participated in all but one session; T.M.'s foster mother, who said that T.M. expressed her desire to return home to her mother; and a friend, who said that Debbie speaks fondly of and longs to be reunited with her children. In addition, Y.B., T.M. and J.M. each told the judge in chambers that they wanted to live with their mother. Finally, Debbie testified that she was determined to complete the chemical dependency treatment program, whether the State's petition was granted or not.

At the close of testimony and arguments of counsel, the court found that it was in the best interests of the children that Debbie's parental rights be terminated. Accordingly, the court granted the State's petition.

## DISCUSSION AND ANALYSIS

### 1. Termination Proceedings Concerning C.B.

Debbie first argues that the trial court lacked authority to terminate her parental rights to C.B., because he was adjudicated dependent under the "no fault" provision of the Juvenile Court Act prior to September 10, 1993. The State and guardian *ad litem* (State) respond that Debbie waived her argument or that the dependency de-

termination is irrelevant because termination proceedings were proper with respect to the other children. See *In re Henry*, 175 Ill. App. 3d 778, 530 N.E.2d 571 (1988). The State's position fails to persuade.

■ The termination of parental rights is an extraordinary measure that warrants stretching our resources without resort to doctrines of judicial convenience, such as waiver, which would avoid consideration of the parties' arguments. See *In re Petition of Kirchner*, 164 Ill. 2d 468, 649 N.E.2d 324 (1995); *In re A.F.*, 234 Ill. App. 3d 1010, 602 N.E.2d 480 (1991). Further, the Adoption Act and the Juvenile Court Act contain strict procedural requirements which embody this state's policy favoring the superior right of parents to the custody of their own children. *In re Custody of Menconi*, 117 Ill. App. 3d 394, 453 N.E.2d 835 (1983).

■ In interpreting the statutes, it is legislative intent, not simple logic, that controls. *In re Jankowski*, 38 Ill. App. 3d 95, 347 N.E.2d 474 (1976). Thus, where the language of a statute applicable to a particular stage of juvenile or adoption proceedings is clear and unambiguous, it is the duty of the court to apply it literally. *Jankowski*, 38 Ill. App. 3d 95, 347 N.E.2d 474. Subsequent amendments to the statutes may not be borrowed on review to "save" a trial court's order, even if the record would indicate that such action might better serve the child's interests. See *In re J.P.S.*, 198 Ill. App. 3d 633, 556 N.E.2d 268 (1990); *In re Gibson*, 24 Ill. App. 3d 981, 322 N.E.2d 223 (1975).

In this case, the statute in effect on September 2, 1993, the date C.B. was adjudicated dependent, provided as follows:

"(1) Those who are dependent include any minor under 18 years of age ***[:]

* * *

(c) who is without proper medical or other remedial care recognized under State law or other care necessary for his *** well being through no fault, neglect or lack of concern by his parents, ***, *provided that no order may be made terminating parental rights*, nor may a minor be removed from the custody of his *** parents for longer than 6 months, *pursuant to an adjudication as a dependent minor under this subsection (c).*" (Emphasis added.) Ill. Rev. Stat. 1991, ch. 37, par. 802—4(1)(c).

Effective September 10, 1993, the subsection was amended by adding the following relevant language:

"unless it is found to be in his *** best interest by the court." 705 ILCS 405/2—4(1)(c) (West Supp. 1993).

■ We do not find that Debbie waived her argument that the "no

fault" dependency determination entered in this case precluded the termination of her rights to C.B. It is true that C.B. remained in foster care for more than two years after he was adjudicated dependent under subsection 2—4(1)(c); that no extension of the six-month removal period was requested; and that the State never pursued another petition for adjudication of dependency or neglect. However, once the petition to terminate parental rights was filed, counsel for Debbie specifically argued that the "no fault" dependency adjudication for C.B. could not be the basis for a termination of parental rights. Therefore, the argument is not waived. Nor do we find that the argument is irrelevant. When the State elects to initiate dependency proceedings with respect to a child, fairness requires that the State comply with the terms of the statute applicable to that child and not rely on alternative provisions applicable to the child's siblings.

■ On the merits, we find that the statute in effect on the date of adjudication—in this case, September 2, 1993—controls. Although the amended version arguably would have permitted termination proceedings to go forward upon a finding that such was in the best interest of the child, the statute that was in effect contained no such provision. It unequivocally prohibited a termination of parental rights based on a finding of dependency under subsection (1)(c). *A.F.*, 234 Ill. App. 3d 1010, 602 N.E.2d 480. The fact that the State could have filed and proved up another petition for wardship is not relevant. The State did not do so. See *J.P.S.*, 198 Ill. App. 3d 633, 556 N.E.2d 268. Accordingly, we agree that the court lacked authority to terminate Debbie's parental rights with respect to C.B., and this cause must be remanded for further proceedings. See *A.F.*, 234 Ill. App. 3d 1010, 602 N.E.2d 480; *J.P.S.*, 198 Ill. App. 3d 633, 556 N.E.2d 268.

## 2. Sufficiency of Evidence of Unfitness

Debbie next contends that the State's evidence of unfitness was not clear and convincing. We do not agree.

■ A trial court's finding of parental unfitness is entitled to great deference since the court has the opportunity to view and evaluate the testimony of the witnesses. *In re Henry*, 175 Ill. App. 3d 778, 530 N.E.2d 571 (1988). On review, the court's decision may not be disturbed unless it is contrary to the manifest weight of the evidence. *In re Allen*, 172 Ill. App. 3d 950, 527 N.E.2d 647 (1988).

A parent may be found unfit pursuant to section 1(D)(m) for failure "to make reasonable efforts to correct the conditions which were the basis for the removal of the child from the parent, or to make

reasonable progress toward the return of the child *** within 12 months after an adjudication of neglected minor, abused minor or dependent minor." 750 ILCS 50/1(D)(m) (West 1994). The finding of unfitness may be sustained on the basis of either failed efforts or failed progress, even if the evidence is insufficient to support the State's other allegations. *In re J.A.S.*, 255 Ill. App. 3d 822, 627 N.E.2d 770 (1994). Whether a parent's progress is reasonable involves an objective judgment based on progress measured from conditions existing at the time custody was taken from the parent. *Allen*, 172 Ill. App. 3d 950, 527 N.E.2d 647. The entire period of the court's wardship should be considered in measuring the parent's progress. *In re R.S.*, 174 Ill. App. 3d 132, 528 N.E.2d 25 (1988). At a minimum, reasonable progress requires some measurable or demonstrable movement toward the goal of reunification. *Allen*, 172 Ill. App. 3d 950, 527 N.E.2d 647.

■ In this case, the court found Debbie unfit under both parts of subsection 1(D)(m). The record amply supports the court's finding that Debbie made no measurable progress toward the return of her children during the 2$\frac{1}{2}$-year period that they were in continuous foster care prior to the unfitness hearing.

Y.B., T.M., J.M. and S.P. were adjudicated dependent in 1992 because Debbie was unable to care for them. 705 ILCS 405/2—4(1)(a) (West 1994). Although inadequate housing was an immediate concern, Debbie's chemical dependency was recognized as an underlying problem as early as April of 1993, when DCFS first recommended a substance abuse evaluation. Debbie was aware of her alcohol addiction and the fact that her failure to complete treatment precluded her from regaining custody of her children. Nonetheless, she never maintained sobriety sufficient to complete a treatment program. Nor did she obtain stable housing appropriate for the children.

During the time her children remained in foster care, Debbie occasionally submitted to chemical dependency treatment and sometimes found appropriate housing. However, she demonstrated absolutely no commitment to either task. At the start of the unfitness hearing, Debbie had been sober for only one month and had no permanent address. We note that she relapsed before the hearing wa' completed. Thus, while she may be commended for honesty in rep·  ·ing drinking relapses right up to the best interest hearing, the evit   ·ce overwhelmingly established that Debbie has made no mea  rable progress toward the goal of reunification with her children. Accordingly, we affirm the trial court's finding of unfitness on this  ·ound without addressing the State's alternate ground of failure ι. make reasonable efforts. See *In re D.L.W.*, 226 Ill. App. 3d 805, 589 ᴾ .E.2d 970 (1992).

### 3. Sufficiency of Evidence of Children's Best Interests

Debbie also contends that the State did not prove by clear and convincing evidence that it was in the children's best interests to terminate her parental rights. Again, we disagree.

Initially, this court has recently determined that the State is not required to prove its case by clear and convincing evidence at the best interest stage. See *In re V.O.*, 284 Ill. App. 3d 686 (1996). Instead, once a parent has been found unfit by clear and convincing evidence, the decision to terminate parental rights rests within the sound discretion of the trial judge. *V.O.*, 284 Ill. App. 3d 686. On review, we will not overturn that decision unless it is against the manifest weight of the evidence. *In re S.O.*, 272 Ill. App. 3d 144, 649 N.E.2d 997 (1995).

■ The record establishes that all of Debbie's children have serious emotional and behavioral problems. They require specialized care far beyond Debbie's foreseeable ability to provide for them. The trial court was well aware that the three older children harbor sincere affection for their mother, but found that any possibility of their reuniting with her was unrealistic. The record supports the court's conclusion that it was in the children's best interests to sever their relationship with Debbie and allow them to move on with their lives without further false hopes. Accordingly, we affirm the trial court's decision to terminate Debbie's parental rights with respect to Y.B., T.M., J.M. and S.P.

### CONCLUSION

The judgment of the circuit court of Peoria County terminating Debbie's parental rights is reversed with respect to C.B. and affirmed in all other respects.

Affirmed in part; reversed in part and remanded.

MICHELA and McCUSKEY, JJ., concur.