27 August 1999

 No. 3--98--0970

_________________________________________________________________

 IN THE

 APPELLATE COURT OF ILLINOIS

 THIRD DISTRICT

 A.D., 1999 

IN THE INTEREST OF J.J., ) Appeal from the Circuit Court

C.J.,
 D.B., and Q.B., ) of the 10th Judicial Circuit,

Minors ) Peoria County, Illinois

 ) 

(THE PEOPLE OF THE STATE OF )

ILLINOIS, )

 )

Petitioner-Appellee,       )  No. 92--J--425 

 )

v.  )  

 ) 

KIMBERLINE B., ) Honorable

                                ) Michael E. Brandt

Respondent-Appellant). ) Judge, Presiding

_________________________________________________________________

PRESIDING JUSTICE HOLDRIDGE delivered the Opinion of the court:

_________________________________________________________________

 

The respondent-mother, Kimberline B., was found to be an unfit parent for her failure to make reasonable efforts or reasonable progress toward the return of her children, J.J., C.J., D.B., and Q.B.  750 ILCS 50/1(D)(m) (West 1996).  After a best interest hearing, her parental rights were terminated.  The respondent appeals, and we affirm.

I.  FACTS

On June 28, 1993, the State filed a neglect petition alleging that five-year-old J.J., three-year-old C.J., one-year-

old D.B., and newborn Q.B. were dependent because the respondent was in in-patient drug treatment and was unable to care for them.  On June 29, 1993, the respondent admitted the allegations in the petition and the minors were adjudicated neglected.  The court made the minors wards of the court and named DCFS their guardian.

At the July 30, 1993, review, the court ordered that the minors remain in foster care and ordered the respondent to complete drug and alcohol treatment and to cooperate with DCFS and its designees.  On May 31, 1994, the court also ordered the respondent to undergo a psychological evaluation, undergo a chemical dependency test, complete recommended treatment, complete developmentally disabled parenting classes, and regularly visit the minors.  

The first permanency review hearing was held on May 14, 1996.  The court found that the services toward the permanency goal of return home were appropriate but unsuccessful and the new permanency goal of substitute care pending court decision was appropriate but not achieved.  The court found that the respondent had not made reasonable efforts and again ordered her to attend drug and alcohol treatment, attend developmentally delayed parenting classes, participate in counseling, and cooperate with DCFS.

At the next two permanency review hearings, the court found that the permanency goal of substitute care pending court decision was appropriate and that the respondent had failed to make reasonable efforts.  At the fourth review hearing, the court allowed visitation at DCFS discretion, and the State filed a petition seeking termination of the respondent's parental rights.   The fitness hearing was held on September 9, 1998.  Dawn Steck testified that she had been the Catholic Social Services (CSS) caseworker for this case since November 1994.  She said the respondent had not successfully completed a drug treatment program although she had been ordered to do so.  The respondent's last attempt at drug treatment had begun in April 1998, but she had quit on May 16, 1998.  In July 1998, the respondent telephoned her and asked for the telephone number of the treatment center because she said she wanted to go back into treatment.  Steck asked the respondent if she had been using alcohol and drugs again and the respondent said she had.  Steck also said the respondent did not submit proof of the completion of counseling.

According to Steck, the respondent had last visited her children almost three years before, on December 27, 1995.  Steck said that the respondent had visited regularly with the children in 1993, but otherwise the visits were sporadic.  The respondent was incarcerated in the summer of 1994 and from September until December 1995.  There were no jail visits in 1995 because the respondent had not been in contact with the caseworkers or visited the children since May 1995 and her whereabouts had been unknown.  

On October 24, 1996, the respondent appeared at Steck's office, they discussed treatment, and Steck arranged for an evaluation for her the next morning.  The respondent told her that she did not have a place to stay, so Steck took her to a mission and told her she would pick her up at 8:00 the next morning.  When Steck returned to the mission the next morning, she learned that the respondent had left the previous evening.  Prior to that occasion, it had been more than a month since she had heard from the respondent.  

Steck said that in July or August 1997, she spoke with the respondent in jail.  The respondent requested a visit with the children and said that she wanted to resume treatment again when she was released.  Steck told her that since it had been so long since the respondent had visited the children, it would not be in their best interest to begin visits at that time.  Steck said the respondent must at least begin her service plan tasks before Steck would allow visitation.  The respondent did not attempt to complete any service plan task until March 1998, when she contacted Steck about starting another drug treatment program.

The respondent testified that she knew that her service plan required drug treatment and parenting classes.  However, she did not know that she had to participate in counseling or that visitation was a task in her service plan.  She said she was in drug treatment at White Oaks but was asked to leave.  She said she left the drug treatment at Proctor Hospital because her mother had cancer and she and her sisters had to take care of her.  She said her mother's cancer was also the reason that she could not see her children on several occasions.  Her mother was diagnosed with cancer in 1996 and died that year.  

The respondent said that she got back into drug treatment in 1998 but that she then had an "accident."  The accident involved getting hit in the eye with a broken beer bottle that someone had thrown at her.  According to the respondent, when she got hurt and could not see out of her eye, another caseworker told her that she would recommend that she be considered to have finished the second phase of treatment and she could progress to the third phase, aftercare.  However, Steck told her that she was considered to have stopped going and she would have to start over to successfully complete treatment.  She said she had made arrangements to enter long-term in-patient treatment at Proctor the following Friday.

When Steck visited her at the jail, Steck asked her to "sign my rights over" which she did not want to do.  She said she believes that she is addicted to alcohol and cocaine.  She acknowledged that she had not completed drug treatment or counseling.  She admitted that she had three glasses of beer the night before this hearing and used cocaine on a daily basis the month before.

Following arguments by both parties, the court found the respondent unfit for failing to make reasonable efforts or reasonable progress.  

The best interest hearing was held on October 28, 1998.  Steck submitted a report that was considered by the court.  In the report, Steck noted that J.J. was 11 years old and she was in the fifth grade in special education.  She had recently been suspended from school and had stolen property at school and at her previous foster home.  She was moved in September at the prior foster parent's request due to her behavior.  Her present foster mother had not committed to adopting her but had committed to providing her a stable home.  However, Steck said that two people, one a relative, had come forward as possible adoptive placements for J.J.

C.J. was 10 years old and in the fourth grade at an alternative school, where he had been placed due to extreme behavior problems, aggression and destructiveness.  His present foster parent will not adopt him but she will continue to care for him.  He enjoyed visits with his siblings and did not ask about his mother.

D.B. was seven years old and in the second grade.  He was in a behavior disorder classroom due to aggressive and destructive behavior and had been suspended for failure to follow directions and lack of impulse control.  D.B.’s foster parent was not willing to adopt him and was considering asking for his removal because of his behavior.  Steck believed that D.B. would make a good transition to a new home but then have difficulty forming trusting relationships at that home.  He enjoyed visits with his siblings and did not ask about his mother.

Q.B. was five years old and healthy and in kindergarten.  He was well-behaved and described as closely bonded to his foster mother and brothers.  Q.B. had been in the same foster home since shortly after birth, and his foster mother was eager to adopt him.  He did not recognize the respondent when he had seen her because she had not visited since he was a toddler and then not often enough to establish a bond.

Steck reported that the respondent had been in drug treatment since October 6, 1998.  Prior to that she had been living with a boyfriend who also used drugs and alcohol.  She is married to another man and has said that she may return to him when she completes treatment.

Gloria Cox testified that she was the respondent's cousin and said that the respondent was not drinking or using drugs anymore.  Cox said that she would help the respondent because she thinks the respondent is capable of being a mother again.  On cross-examination, Cox admitted that she herself had used marijuana and heroin as recently as six months ago.

The respondent testified that she had not used drugs since the last hearing.  She said she intends to overcome her addiction.  She said although Q.B. may not know her, all the other children do and J.J. an C.J. in particular have a bond with her.  She said she had not seen them but some of her family had, and they said J.J. and C.J. always ask about her and tell people that they love the respondent and want to come home.  The respondent said that termination of her parental rights would not be in the children's best interest because she was going to treatment and she loves her children and wants them back.  On cross-examination, she said she did not know whether visits with her children are still available to her and she had not asked.

The court subsequently found that it was in the children's best interests to terminate the respondent's parental rights.

II.  ANALYSIS

Unfitness

On appeal, the respondent argues that the trial court erred in finding that she failed to make reasonable efforts to correct the conditions which led to the removal of the minors.

Whether a parent has made reasonable efforts to correct the conditions which were the basis for the removal of the children is a subjective judgment regarding that parent’s efforts.  
In re S.O.
, 272 Ill. App. 3d 144, 649 N.E.2d 997 (1995).  A finding of unfitness must be based on evidence that is clear and convincing.  
In re Adoption of Syck
, 138 Ill. 2d 255, 562 N.E.2d 174 (1990).  Once a finding of unfitness has been made, it will be given great deference and will not be disturbed on appeal unless it is contrary to the manifest weight of the evidence.  
In re J.B.
, 198 Ill. App. 3d 495, 555 N.E.2d 1198 (1990). 

Here, the children were removed from the respondent's home because she was in a drug-treatment program and was unable to care for them.  The fitness hearing occurred over five years later and nothing had changed.  The respondent never successfully completed a drug treatment program, and she continued to abuse alcohol and drugs up until the fitness hearing.  Further, she had not visited her children in over three years.  Our review of the record indicates that she has made little effort to correct the conditions that led to the removal of her children.  Accordingly, the trial court's ruling that the respondent failed to make reasonable efforts was not against the manifest weight of the evidence.  

The respondent also argues that the trial court erred in finding that she failed to make reasonable progress toward the return of her children.  However, we need not review this issue because a finding of unfitness on any one ground obviates the need to review other statutory grounds.  
In re J.A.S.
, 255 Ill. App. 3d 822, 627 N.E.2d 770 (1994).

Best Interest

Finally, the respondent argues that the trial court erred in terminating her parental rights.

Once a finding of unfitness has been made, all considerations yield to the best interest of the child.  
In re M.C.
, 197 Ill. App. 3d 802, 555 N.E.2d 111 (1990).  The trial court’s decision to terminate an individual’s parental rights will not be disturbed absent an abuse of discretion.  
In re V.O.
, 284 Ill. App. 3d 686, 673 N.E.2d 439 (1996).

At the time of the best interest hearing, only Q.B. was in a home with a foster parent that wished to adopt him.  However, two people were interested in adopting J.J., one of whom was a relative.  We are saddened by the difficulties that J.J., C.J. and D.B. were experiencing in their foster homes.  At the same time, we do not believe that their situations would improve if they lived with their mother.  She cannot provide a home for them or the type of structure that they need in their lives.  Therefore, the trial court properly terminated the respondent's parental rights.

Accordingly, the judgment of the circuit court of Peoria County is affirmed. 

Affirmed.

HOLDRIDGE, P.J., with HOMER and KOEHLER, J.J., concurring.